[Civ. No. 5956. Third Appellate District.—March 23, 1938.]

CARL BINGHAM, Respondent, v. CHARLES E. GREEN-AMYER, Jr., Appellant.

468

C. Ray Robinson, James D. Garibaldi and Willard B. Treadwell for Appellant.

Frank C. Hale and Edward Bickmore for Respondent.

PLUMMER, J.—The plaintiff had judgment against the defendant, awarding him damages for and on account of an injury sustained in an automobile collision on or about the 4th day of February, 1936. From this judgment the defendant appeals.

The facts as found by the court are to the effect that on the 4th day of February, 1936, at about the hour of 7 A. M., at a point on the California State Highway No. 140, in the county of Merced, the defendant, Charles E. Greenamyer, Jr., was proceeding in a Ford car in a westerly direction at a speed of 30 to 40 miles per hour—(the testimony of the defendant was to the effect that he was driving at about 35 miles per hour)—upon his right side of the road; that at said

time and place his headlights were lit and the car was in a good mechanical condition. It was a foggy morning, but ordinary objects could be seen on the road for a distance of about 150 feet. Objects which had lights upon them could be seen at a greater distance. The pavement was white concrete, and was wet from the effects of the fog. That at a point about eight miles west of the city of Merced an employee of the California Packing Corporation named Gilbert Pitts was driving a truck owned by said corporation, in an easterly direction. Upon the truck eighteen employees were being transported from one ranch to another belonging to the corporation. One of said employees was the plaintiff in this action. The employees were riding up on the bed of the truck with their legs hanging over the sides thereof. There appears to have been plenty of room on the bed of the truck for the employees to ride thereon without their legs hanging over the sides thereof. The length of the truck over all was about 18 feet. The width of the concrete pavement was about 18 feet, with shoulders on each side approximately two feet in width.

At the point above indicated, as the truck was proceeding in an easterly direction, the driver thereof, without giving any warning or intimation of his intention to make a left-hand turn, turned into a private driveway across the half of the road upon which the defendant was proceeding in a westerly direction. In making this turn the truck completely blocked the defendant's right-hand side of the highway. There was no available space left for the defendant to turn to the right. The defendant immediately applied his brakes and attempted to turn to the left. The right side of the Ford car sideswiped the right side of the truck and the leg of plaintiff's boot was caught in the handle of the door of the Ford car and the plaintiff's leg was injured. The record shows that the truck was turned to the left immediately in front of the Ford car when the Ford car was approximately distant only 75 feet.

The record also shows conclusively that the driver of the truck did not look in front of him to ascertain whether any car was approaching before actually turning to the left. His own testimony is to the effect that as he was turning, he saw the Ford car at a point about 60 feet distant. It appears also that the driver of the truck, with a thoughtless impulse,

applied the brakes instead of stepping on the accelerator, and stopped his truck so as to completely block the side of the road upon which the defendant was entitled to travel, and also partly blocked the opposite side of the paved highway.

The finding of the court upon which the judgment of this court is based reads as follows:

"That as a direct and proximate result of the carelessness and negligence of the defendant Charles E. Greenamyer, Jr., in driving at excessive speed through the fog, and the carelessness and negligence of the said Gilbert Pitts, the driver of said truck, and as a direct and proximate result of the collision mentioned in the plaintiff's complaint, plaintiff received great, severe and painful injuries," etc.

We may here state that the record shows that the California Packing Company was not made a defendant in the action, as the Industrial Accident Commission had taken jurisdiction of the case so far as the packing company was concerned, and had awarded the plaintiff compensation.

■ The main portion of the defendant's appeal is based upon finding VI, which we have just quoted, and is to the effect that there is no testimony showing that the defendant was driving at an excessive speed, and also no showing that the presence of the fog which we have mentioned had anything to do with causing the collision; that the cause of the collision was solely and exclusively due to the negligence of the driver of the truck in turning his car without having made any observation as to whether the turn could be safely made into a private driveway.

The record shows that at the time of the collision the driver had with him on the driver's seat, two other persons, one of whom he asked to look to the rear, preceding the making of the turn. This person testified that he could see between 150 and 200 feet, and reported all clear in the rear. The testimony likewise shows a failure on the part of the two persons who were riding with the driver, to make any observations as to whether there were any cars approaching. Their testimony is to the effect that they did not see the approaching car until it was about the distance ahead which we have stated. This testimony shows conclusively that the turn was made at a time when cars were visible at a distance of between 150 to 200 feet. The record further shows that when the driver of the Ford car observed the turning of the truck to

the left and across his side of the highway, he immediately applied his brakes and turned to the left in an attempt to avoid a collision. There is no testimony in the record to the effect that there was sufficient space left on what would be the south side of the highway, for the defendant's Ford car to pass by without coming in contact with the truck. The record further shows that there was no side skidding of the Ford car. Some of the witnesses did testify that there were skid marks made by the tires of the Ford car. This was contradicted, but such would be occasioned only by the violent application of the brakes, but the pavement was not sufficiently moist to cause any side skidding of the Ford car. It is further shown by the record that the Ford car was stopped within a distance of either 95 feet or 110 feet. The testimony is in substance as follows: One witness testified that the Ford car stopped within 20 feet of the point of the impact. Another witness estimated the distance at 30 feet. This testimony establishes the fact beyond controversy that the Ford car was stopped well within the range of visibility, and that the Ford car was not traveling at such an excessive rate of speed that it could not be stopped within the range of the driver's visibility. Even the driver of the truck testified that he could see at least 120 feet ahead of him.

The question arises: Has finding VI any support in the record?

The respondent calls our attention to the case of *Flynn* v. *Kumamoto*, 22 Cal. App. (2d) 607 [72 Pac. (2d) 248], a recent case decided by this court. The facts in that case are readily distinguishable from the questions presented upon the record here. In the Flynn case it appears that two boys were riding on bicycles, proceeding in the same direction as the driver of the automobile which ran down one of the bicycle riders. The defendant driver in that case appears to have been blinded by the approaching lights of a car traveling in an opposite direction, and as his vision was restored, he observed the bicycle riders only a few feet in front of him, and the collision immediately occurred. The question of driving when one's sight is blinded by the approaching headlights of another car has been considered in many cases, and all the cases hold that it is the duty of a driver under such circumstances to slow down his car so that he can stop immediately. All the cases cited in the Flynn case are to

that effect. The conditions just recited show the inapplicability of the Flynn case.

Another recent case decided by this court is that of *Cannon* v. *Kemper*, 23 Cal. App. (2d) 239 [73 Pac. (2d) 268]. There the defendant was driving at 35 miles per hour on a foggy morning. His testimony is to the effect that the fog was so thick that he could only see approximately 25 feet ahead of him, and that it required at least 65 feet for him to stop his car.

The authorities cited in the foregoing cases all show that the driver of the offending car was being propelled at a speed far beyond visibility, and far greater than the possibility of stopping one's car within the range of visibility.

Section 110 of the California Vehicle Code is cited in many of the cases to the effect that no person shall drive a vehicle upon a highway at a speed that is greater than is reasonable and prudent, having due regard for the traffic on, and the surface and width of the highway, and in no event at a speed which endangers the safety of persons or property.

■ Section 670 of the California Vehicle Code sets forth in detail the distances within which cars should be equipped so as to bring the same to a stop when traveling at a particular speed. This section as to speed and stopping distance, refers particularly to dry asphalt or concrete pavement surfaces, where the grade does not exceed one per cent. In the schedule there set forth it is shown that upon a dry pavement, driving at 35 miles per hour, a car should be stopped within 113 feet. The record as we have stated shows a stopping of the defendant's car either within 95 feet or 105 feet, according to the testimony of the two witnesses, and whichever testimony is accepted establishes the fact that the car of the defendant was stopped on the so-called wet pavement within a distance which a car properly equipped is said to be stopped on a dry pavement within 113 feet. This excludes the idea that the defendant was driving at an unreasonable rate of speed on a highway where the California Vehicle Code allowed a speed of 45 miles per hour, and where he was driving at a speed which permitted the stopping of his car within, at the outside, not over two-thirds of the distance of visibility.

■ While the law is clear that every driver of an automobile must keep a sharp lookout for others who may be using the highway and may anticipate the presence of others

who may lawfully be upon the highway, there is no law and no reason to support the conclusion that the driver of an automobile will, without any reason whatever, violate the law and turn to the left in front of an approaching automobile so close as to render the avoidance of a collision almost impossible, and under conditions where, had he looked, he might easily have perceived the approaching automobile and the hazard of making a left turn in front thereof.

Section 544 of the California Vehicle Code requires that the driver of an automobile about to turn to the left shall give a signal thereof by extending his right arm horizontally, and keep it extended for at least 50 feet before attempting to make the turn. Or, if the vehicle is equipped with a signal device, that device shall be used in the same manner. We may here state that the extending of the arm and then the withdrawal of the arm immediately, does not comply with the section. The requirement of keeping the arm extended for at least 50 feet is to enable approaching drivers to see the signal and take such precautions as may be necessary to avoid a collision. We may add further that the record fails to show that the driver of the Ford car did not do everything that he could do to avoid the impact with the truck.

In view of what we have just stated, we do not perceive how it can be reasonably held that the collision and attendant injury to the plaintiff was not caused solely and exclusively by the negligence of the driver of the truck, who seems to have overlooked the fact that he had the safety and lives of eighteen persons in his charge.

The judgment is reversed.

Thompson, J., and Pullen, P. J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 19, 1938.