[Civ. No. 12827. First Dist., Div. One. July 13, 1945.]

ANTHONY KOSLOSKYE, as Administrator, etc., Respondent, v. ANNIE CIS et al., Defendants; ENRICO CIS et al., Minors, etc., Appellants.

J. Elwood Andresen and Eugene T. Nebiolo for Appellants.

Harold F. Sawallisch, Elden C. Friel, Arthur B. Dunne and Dunne & Dunne for Respondent.

PETERS, P. J.—Plaintiff, as the administrator of the estate of Domenico Cis, brought separate actions to determine ownership of two bank deposits, one in the Crocker First National Bank, and the other in the Bank of America. Cross-complaints were filed by two minor nephews of the deceased through their father as guardian *ad litem*, each nephew claiming title to one of the deposits. The two cases were consolidated and tried upon an agreed statement of facts. The trial court determined that the administrator was entitled to recover the deposits from the banks, that title to the deposits, subject to adminstration, was in the heirs at law of decedent, and that the nephews have no right therein. From this judgment the nephews appeal.

For many years prior to April 13, 1933, the decedent had two savings accounts in his own name in the two banks above mentioned. The money therein was his separate property, having been acquired by him before his marriage to Annie Cis, his surviving widow, whom he married in January of 1928. Domenico died intestate July 22, 1941, leaving his wife surviving him. Unless the two accounts are part of his estate he left no other property of any kind or nature.

On April 13, 1933, Domenico had $2,882.32 on deposit with the Crocker bank. On that date he withdrew the entire sum and opened a new account, #25226, which was entitled: "Mr. Domenico Cis, Trustee for Enrico Cis." Enrico Cis is the nephew of Domenico, and at the time the deposit was made Enrico was about nine years of age. No withdrawals were ever made from this account and the only deposits appear to be of interest which was allowed to cumulate. The signature card was signed by Domenico alone. At the time of death the account totaled $3,447.20.

On April 6, 1933, Domenico had $3,282.01 on deposit with the Bank of America. On that date he closed this account and withdrew the entire sum. On April 13, 1933, he opened a new account with the same bank, #2470, in which he deposited $3,282.01 and which account was entitled: "Domenico Cis,

Tr. for Clemente Cis.'' Clemente Cis is another nephew of Domenico, is a brother of Enrico, and at the time the deposit was made was about three years of age. On September 8, 1939, the decedent withdrew $4.40 from this account. There were no other withdrawals. The only deposits were of interest which was permitted to cumulate. The signature card was signed by Domenico alone. At the time of death this account totaled $3,947.80.

It appears from the agreed statement of facts that neither the nephews, nor their parents, nor any person on their behalf, had any knowledge of the deposits until long after decedent's death. It also appears that the surviving widow knew nothing of the deposits until more than a year after the death of Domenico, when the deposit books were discovered in a safe deposit box in the Bank of America. The agreed statement also discloses that Domenico was married to Annie in 1928; that they lived together continuously until his death in 1941; that except for the two deposits the decedent left no property of more than nominal value; that the surviving widow has no property of her own; that during 1931-1934 decedent was unemployed a considerable part of the time and did not earn enough to support his household with the bare necessities; that during this period, children of Annie by a former marriage furnished Domenico and his family with money for living expenses; that such persons have never been reimbursed for these advances; that during 1937 decedent quarrelled with his brother, the father of Enrico and Clemente, and thereafter did not visit or communicate with his brother or his brother's family.

The trial court on these facts concluded that the two accounts were part of the estate of decedent and that the two nephews had no interest therein.

The appellants concede that no gifts of the accounts were made, and that no irrevocable trusts in the accounts were created during the lifetime of Domenico. They urge, however, that tentative trusts, revocable at the will of Domenico, were created by the deposits, and that upon the death of Domenico before the beneficiaries, and without revocation by him, a trust arose which may be enforced by the beneficiaries. There are at least two lines of authority on this subject. There is a very definite line of authorities, headed by cases from New York, holding that accounts in such form raise

a presumption or inference that trusts were intended, and that upon the death of the depositor the beneficiary may enforce such a trust. Another line of authorities, headed by cases from Massachusetts, hold that the mere deposit in a trustee account is not sufficient evidence to support a finding of an intent to create a trust. This conflict of authorities was noted in *Kuck* v. *Raftery*, 117 Cal.App. 755, 758 [4 P.2d 552], where the court stated: ". . . there are two lines of authority upon the subject which are founded respectively upon the New York and Massachusetts decisions. The two rules are well stated by the Supreme Court of Minnesota in *Walso* v. *Latterner*, 140 Minn. 455 [168 N.W. 353]: 'Where the depositor dies without withdrawing the deposit, the authorities are in conflict. In Massachusetts it is settled by a long line of decisions that the mere fact of such a deposit being made "in trust for" another, coupled with the retention of the passbook by the depositor, is not sufficient evidence of a trust to entitle the beneficiary to the deposit on the death of the depositor. (Citing cases.)

" 'In New York the rule is the other way. The doctrine of the New York cases at the present time is best stated in *Matter of Totten*, 179 N.Y. 112 [71 N.E. 748, 70 L.R.A. 711], also reported that an elaborate note in 1 Ann.Cas. [900] 910. We quote: "A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor" . . .

" 'The authorities are practically in accord on the proposition that the existence of the trust in every such case is a question of fact involving the intention of the donor and an apt declaration of that intention. See above note in 1 Ann. Cas., at page 904, and cases cited. The conflict between the New York decisions and those in Massachusetts is not at all over the validity of such a trust, but wholly as to what is sufficient evidence to make a question for the jury on the issue of the intention of the depositor. Even in Massachusetts, where the

evidence shows declarations of his intention to create a trust, or to give the money to the beneficiary, the court refuses to disturb a finding that the trust is complete and enforceable on the death of the depositor. (Citing cases.)' ''

The rule of the New York cases has, at least, in part, been adopted by the Restatement of the Law of Trusts. Section 58 reads as follows:

''Where a person makes a deposit in a savings account in a bank in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust.'' A portion of Comment (a) following the section reads as follows:

''*a.* If a person makes a savings deposit in a bank in his own name 'as trustee' for another person, his intention may be either (1) to create a revocable trust, or (2) to create an irrevocable trust, or (3) not to create a trust. Evidence may be admitted to show which was his intention.

''In the absence of evidence of a different intention of the depositor, the mere fact that a deposit is made in a savings bank in the name of the depositor 'as trustee' for another person is sufficient to show an intention to create a revocable trust. To such a trust the rule stated in this Section is applicable. Such a trust is called a 'tentative trust.'

''Evidence may be admitted, however, to show either that the depositor intended to create an irrevocable trust or that he did not intend to create a trust.''

■ Just what the rule is in California is not entirely clear from the authorities. In addition to *Kuck* v. *Raftery, supra,* the problem has been discussed in *Sherman* v. *Hibernia S. & L. Soc.,* 129 Cal.App.Supp. 795 [20 P.2d 138]; *Evinger* v. *MacDougall,* 28 Cal.App.2d 175 [82 P.2d 194]; *Estate of Alberts,* 38 Cal.App.2d 42 [100 P.2d 538], and *Hyman* v. *Tarplee,* 64 Cal.App.2d 805 [149 P.2d 453]. All of these cases cite, and most of them quote, from the leading New York case of in *Matter of Totten, supra.* In none of the cases was it indispensable to adopt unequivocally the tentative trust doctrine, but in most of the cases the doctrine is referred to with apparent approval. Moreover, section 15a of the Bank Act (Stats. 1909, p. 87 as amended; Deering's

Gen.Laws, Act 652) provides that where such deposits have been made in trust, upon the death of the trustee, the bank may pay the deposit to the beneficiary. While the doctrine is somewhat anomalous in view of our rigid law of wills, and in view of the provisions of section 2280 of the Civil Code, it is based upon a sound public policy. (See 28 Cal.L.Rev. 202.) For the purposes of this opinion it may be assumed that a deposit in trust, and nothing more, will support a finding of an intent to create a trust.

It will be noted that the New York cases, the Restatement and the California cases, all recognize that the problem is one of intent of the depositor, and that this is a question of fact for the trier of the facts. The Totten case states that where the depositor who has made a trustee deposit dies before the beneficiary without revocation, or some decisive act of disaffirmance "the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor." (71 N.E. at p. 752.) In later New York cases the court has held that the form of the deposit, without other evidence, gives rise to an "inference" only. The case of *In re Herle's Estate,* 300 N.Y.S. 103, 115, states the modern New York view as follows: "Under the doctrine of *Matter of Totten,* 179 N.Y. 112, 125, 71 N.E. 748, 70 L.R.A. 711, 1 Ann.Cas. 900, the opening and continuance of an account in so-called 'trust' form creates no more than a presumption that it was the intention of the depositor that the avails of the account should become the property of the beneficiary on the death of the depositor. [Citing cases.] This so-called 'presumption' is, however, wholly different in effect from the true presumption of law relating to the survivorship rights resulting from the opening of a joint account in statutory survivorship form [citing cases] and is, in reality, not properly classifiable as a presumption at all [citing cases]. It is a mere inference of fact, which, like other inferences, is subject to rebuttal by contrary evidence or stronger inferences. [Citing cases.] Such controverting demonstration may be made either by a showing that there was no initial intention to confer a benefit upon the nominal cestui que trust (*Morris* v. *Sheehan, supra*), or that, after the opening of the account with this wish in mind, the sentiments of the depositor on the subject changed." (See, also, *Krause* v. *Krause,* 285 N.Y. 27 [32 N.E. 2d 779], and *In re Reich's Estate,* 146 Misc. 616 [262 N.Y.S. 623], where it was held that the form of the deposit creates an inference only.)

Whether the form of the deposit, without other evidence, creates a rebuttable presumption or an inference need not be determined in this case. ▆ Of course if different inferences are possible, one that a tentative trust was intended and one that it was not, the finding of the trial court would be conclusive. (*Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689].) ▆ Moreover, it is the rule, that "whether a particular inference can be drawn from certain evidence is a question of law, but whether the inference shall be drawn, in any given case, is a question of fact for the jury." (*Blank* v. *Coffin*, 20 Cal.2d 457, at p. 461 [126 P.2d 868].) ▆ Thus, if the form of the deposit creates but an inference, it is obvious that the finding of the trial court cannot be attacked successfully. If the form of the deposit creates a presumption, such presumption is, of course, a rebuttable one. ▆ Evidence is admissible to show the true intent of the decedent. ▆ The trial court, in holding that the evidence indicated that it was not the intent of the decedent that his nephews should have the balance in the accounts, was impressed by the following factors, as indicated by the opinion filed in the case and made a part of the record on appeal.

1. Other than the form of the deposits there is no evidence of an intent to create a trust.

2. The decedent and his wife were married in 1928 and lived together continuously, and apparently harmoniously, until his death in 1941. Unless these accounts are part of his estate the wife will be left penniless. The trial judge in weighing these facts stated: "It is a legitimate inference that may properly be drawn from the situation thus presented that the decedent would have desired that his wife be left with some means of support rather than that his whole estate would go to his two nephews between whom and decedent there does not appear in the record to have been any bond of affection other than the somewhat attenuated one that might normally flow from such relationship."

3. During the years 1931-1934 decedent was unemployed for most of the time and lived on the charity of his wife's relatives.

4. During 1937 decedent quarrelled with his brother, the father of the appellants, and did not thereafter communicate with or visit his brother or his brother's family.

For these reasons the trial court determined that the evidence showed an intent not to create a trust. Under the facts

here disclosed, we think this was a question of fact for the trial court, and that its finding is supported by substantial evidence or reasonable inferences therefrom. Where, as here, there is no direct evidence of intent, the trial court must, of necessity, determine the factual question upon the reasonable probabilities. In such a case the trial court must, of necessity, rely upon general evidence of the family situation and financial circumstances. That such facts may properly be considered on the question of intent is well-settled. (See many cases collected and commented upon in 1 Bogert on Trusts and Trustees, p. 217.) Assuming that the case starts with a presumption in favor of a trust, the trial court, in the absence of any direct evidence of intent other than the form of the deposit, must consider all relevant facts relating to the family relationship in order to ascertain whether it is reasonably more probable that a trust was intended or reasonably more probable that one was not. While the facts disclosed by the present record are not as clear on the issue of intent as might be desired, they are sufficient, in our opinion, to support the findings that the decedent did not have an intent to create a trust.

The judgment appealed from is affirmed.

Ward, J., and Bray, J. pro tem., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 30, 1945. Shenk, J., and Traynor, J., voted for a hearing.