[Civ. No. 17127. Second Dist., Div. One. Aug. 22, 1950.]

ROBERT S. BARDIN, Respondent, v. F. W. CASE et al., Appellants.

[Civ. No. 17128. Second Dist., Div. One. Aug. 22, 1950.]

ALINE S. BARDIN, Respondent, v. F. W. CASE et al., Appellants.

Forrest A. Betts, Betts, Ely & Loomis, William C. Ring, Walter C. Harbert and Lasher B. Gallagher for Appellants.

Thomas F. McGrath and Spray, Gould & Bowers for Respondents.

WHITE, P. J.—These appeals arise out of two actions brought respectively by Robert S. Bardin and his wife, Aline Bardin, to recover damages for personal injuries sustained by them in a collision between a Dodge automobile driven by Mr. Bardin and a Plymouth automobile operated by defendant J. M. Loyd and registered in the name of defendant F. W. Case. The two actions were consolidated for trial and heard before a jury, which returned verdicts in favor of each of the plaintiffs and against both defendants. Judgments were entered on the verdicts, the judgments against defendant Case in each action being limited to $5,000 under the provisions of section 402 of the Vehicle Code. Each of the defendants has appealed from the respective judgments against him.

The two main contentions of appellant Case are that the court erred in instructing the jury that as a matter of law defendant Loyd was operating the Plymouth automobile with the permission of Case, and erred in instructing the jury that there was no evidence of contributory negligence on the part of plaintiffs. The only contentions of appellant Loyd are that the court erred in taking the issue of contributory negligence from the jury and in refusing Loyd's proffered instructions on the subject of contributory negligence.

Turning to the evidence, it appears that at about noon on August 24, 1947, plaintiff, with his wife as a passenger, was driving north on Highway 99 (the Ridge Route), and defendant Loyd was driving south on the same highway. The weather

was clear and the pavement dry. The paved portion of the roadway contained three marked lanes. The accident occurred at a point about 25 feet north of the northerly entrance to a service station known as "Five-mile Garage" located on the east side of the highway about five miles south of the summit of the Ridge Route. As the two vehicles approached the service station, each in its proper lane, the Loyd car suddenly veered to its left, came diagonally across the road, and struck the Bardin vehicle, which had been swerved to the right in an effort to avoid the collision. When the cars came to rest, the Loyd car was on the pavement facing southeast, while plaintiffs' car faced northeast and was partly on the pavement and partly on the shoulder. The State Highway Patrol found 20 feet of skid marks behind plaintiffs' car and 70 feet of skid marks behind the car of defendant Loyd. Just above the Five-mile Garage the roadway curves to the northwest. From the diagram contained in the appendix to appellant Case's brief, it would seem that the Loyd car did not swerve, but simply failed to follow the curve in the roadway, with the result that it proceeded directly into the path of plaintiffs' car.

There were no eyewitnesses to the accident other than the persons involved. Plaintiff Mrs. Bardin testified that her injuries caused a lapse of memory as to events preceding and following the accident, and she could recall none of the circumstances of the collision. Defendant Loyd also testified that as a result of his injuries he could not recollect the circumstances of the collision.

Considering the claim of both appellants that the jury should have been permitted to find on the issue of contributory negligence, it becomes necessary to summarize the testimony of plaintiff Robert S. Bardin. In substance, he testified that he saw the other car coming downgrade in the right-hand lane when it was possibly 100 to 150 yards away. There were no cars ahead of him. When the distance between the two cars was between 125 and 150 feet, the other car suddenly changed direction and headed straight across the highway, when it became apparent to him that there was going to be a collision; that there was "absolutely nothing that could be done" about it. He headed his car for the right-hand side of the highway and immediately put on his brakes while he was 2 or 3 feet inside the lane. The shoulder to his right was about 8 feet wide. The impact rendered him momentarily unconscious. On cross-examination he testified that he had maintained a

speed of 35 miles per hour until he anticipated the collision. He had traveled the Ridge Route several times. He was in a position to observe the Five-mile Garage when he was about 100 yards away from it. As he approached the garage he was aware of the possibility of automobiles going in and out and that in traversing the Ridge Route automobiles frequently become hot and are parked at service stations, but he did not recall any cars parked at the time of the accident.

Defendant Loyd testified under section 2055 of the Code of Civil Procedure, that he stopped for fuel, food and a short rest of about one hour south of Merced, and stopped again for "naps" south of Fresno and Bakersfield. He did not believe he was asleep just before the accident, but did not recall the impact. He did not recall stating after the accident that he had been without sleep or that he fell asleep before the accident, and did not recall a purported statement to the Highway Patrol apparently bearing his signature. His last recollection before the accident was rounding a slight curve north of the Five-mile Garage. He testified he was alert and his sight unimpaired. He "had in mind that having climbed most of the grapevine and starting down on the other side, I might need to have gas and oil checked." He recalled seeing the plaintiffs' car, but nothing further concerning the accident.

A doctor called by plaintiff testified on cross-examination that plaintiff Robert S. Bardin had previously suffered from a broken back, requiring extensive treatment, and that he had also treated him for an exophthalmic goitre. It was admitted that Mr. Bardin wore tinted glasses, that most of his teeth had been extracted, and that he was afflicted with hay fever. It was further undenied that Mrs. Bardin was the registered owner of the Dodge automobile and a competent motor vehicle operator.

Appellant Case urges that the jury might have found, "from conflicting evidence or inferences that plaintiffs or either of them were contributorily negligent." The argument in this respect occupies 15 pages in appellant's brief. Summarized, it is that under the evidence the jury might have reasonably concluded that Mr. Bardin failed to act as a reasonably prudent man, in that he could have braked more sharply and turned to the left into the center or passing lane, and thus avoided the accident; and further, that Mrs. Bardin, knowing of her husband's previous back injury, his previous operation for goitre, resulting possibly in slowed reaction, and his eye condition which required tinted glasses, was negligent in not

either taking control of the vehicle prior to the accident or acting to aid in prevention of the accident when she saw the vehicle of defendants approaching. The same contentions are advanced by appellant Loyd. These arguments, ably presented as they are, cannot prevail.

There is no question here as to the principles to be applied. Contributory negligence, like negligence, is a question of fact for the jury, except where the trial court can hold as a matter of law that only one inference can be rationally drawn from the evidence. (*Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826] ; *Blank* v. *Coffin*, 20 Cal.2d 457 [126 P.2d 868] ; *Kosloskye* v. *Cis*, 70 Cal.App.2d 174 [160 P.2d 565].) The question presented to us is whether, under the evidence, any inference of contributory negligence can rationally be drawn. We are of the view that the record presents no substantial evidence to warrant such an inference. The possibility of such negligence may be conceded, but that is not sufficient. An inference of fact must be based upon *substantial* evidence, not conjecture. "In order to justify the submission of any question of fact to a jury, the proof must be sufficient to raise more than a mere conjecture or surmise that the fact is as alleged. It must be such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists, and when the evidence is not sufficient to draw such inference, the court should refuse to submit the question to the jury." (*In re Calkins*, 112 Cal. 296, 306 [44 P. 577].)

Appellant Case argues that the jury could have found from the evidence that Mr. Bardin, who was familiar with the route, knew or should have known, that cars might cross the highway in order to stop for service at the garage; that he saw Loyd's car change direction while 150 feet away and then believed a collision was imminent; that a collision could have been avoided only if plaintiffs' car was slowed sufficiently to enable Loyd to pass in front of it, or if plaintiffs' car was turned to the left so as to pass behind Loyd's car. It is pointed out that plaintiffs' brakes were in good condition, and therefore their car could have been stopped within less than 113 feet, but that there were only 20 feet of skid marks behind the plaintiffs' car. The jury could have found, it is urged, that Mr. Bardin was negligent in that, perceiving the imminence of collision, he failed to turn the 5 or 6 feet to the left which would have prevented the accident.

It is argued, in effect, that Mr. Bardin should have anticipated a car turning toward the garage. The evidence is that

the accident occurred 25 feet north of the north entrance to the garage. There is no evidence that Loyd gave any signal indicating an intention to turn. Plaintiff was driving at a lawful rate of speed—35 miles per hour.

Appellant Case argues further: "Mr. Bardin's testimony as to his earliest knowledge of danger and when he first applied his brakes and turned his car would not have been conclusive on the jury, who could have found from all circumstances, including the physical evidence, that he negligently failed to avail of a reasonable opportunity to avert the collision, . . . Or the jury could have inferred from the length of plaintiff's skid marks and the fact that their speed was apparently not retarded until the last 20 feet before the impact, that their brakes were defective, or not timely applied or that they were driving at an excessive speed, either of which was negligence. . . ."

The "circumstances, including the physical evidence," warrant only one conclusion—that without warning, the Loyd car shot across the road directly into the path of plaintiffs' car, and that plaintiff Mr. Bardin had perhaps a second, at the most, in which to react. Plaintiff driver was not required to anticipate negligence on the part of the other driver (*Bingham* v. *Greenamyer,* 25 Cal.App.2d 467 [77 P.2d 867]); nor may he be held guilty of contributory negligence because in a moment of imminent peril he failed to take the course that careful consideration after the fact shows that he ought to have taken (*Karr* v. *Parks,* 40 Cal. 188, 193).

Further discussion along this line would serve no useful purpose. It can only be said that, had the jury been instructed upon contributory negligence and returned a verdict for the defendants, a new trial would have been mandatory and it would have been an abuse of discretion to deny it. Our conclusions in this regard apply also to the argument that Mrs. Bardin was guilty of contributory negligence, as well as to the contentions on appeal of appellant Loyd.

The court instructed the jury that there was no evidence that Loyd was acting in the scope of his employment at the time of the accident, but that defendant Case was liable if the car registered in his name was used with his permission, express or implied, and that upon this second theory, "in view of the testimony of the defendant Case himself, the defendant Loyd, at the time of the collision, was driving the automobile with the permission of Case." Appellant Case attacks this in-

struction upon the grounds (1) that the court erred in taking this issue from the jury, and (2) that the court abused its discretion in denying his motion to reopen the case to enable him to move to strike the testimony of Case that after a tentative agreement for the sale of the automobile to Loyd was made, "from then on I considered the car Loyd's."

Loyd was employed by defendant Case at Los Angeles. There was evidence from which it could be concluded that prior to the purported sale hereafter discussed Loyd was authorized to use the vehicle only to go to and from work and on business errands for Case, although Loyd testified that there was no restriction on his use of the vehicle. At the time of the accident Loyd was admittedly operating the vehicle for a purpose of his own, returning from Berkeley, whence he had gone in connection with the enrollment of his son at the University of California. About two weeks before the happening of the accident, the question of Mr. Loyd's buying the vehicle came up, and with reference to this point Loyd testified:

"To the best of my remembrance, your Honor, Mr. Harris (an employee of Case) was talking with Mr. Case, on the walk in front of the office, and mentioned to Mr. Case that one of his men, a field man, would like to buy a car; and that this car that I was driving had been mentioned; and so Mr. Case called me out and asked me if I would like to have the car; and I said, 'Yes'; that I would have to have transportation; but as I recall, no further conversation took place at that time, your Honor; at least no arrangements were made. I asked what the price this gentleman was offering was and Mr. Harris said $300.

". . . I said I would have to have transportation and if some arrangement could be worked out, probably we could get together, or words to the same effect. . . ."

Appellant Loyd testified that no further conversations were had and nothing further was done about the contemplated transaction. However, appellant Case testified, with respect to the purchase of the vehicle: "Jim Loyd came out. I said, 'Well, Jim, we have got a chance to sell the Plymouth now and Dan James here, a truck driver, wants to buy it, and you are entitled—we thought it was only no more than fair to give you the first chance to buy it.' He said, 'Okay; I will take it'; *and from then on I considered the car Loyd's.* . . . He (Loyd) said 'I am going to put my boy in school . . . in Berkeley, and I am pretty short of money right now, and I

would like to make arrangements to pay for it weekly, if you are not going to be too tough on me it will be all right.' He said, 'I think after the boy gets up there and we get organized a little bit, I can pay you $10 a week on the car.' I said 'That is perfectly all right.' " With respect to the indorsement of the ownership certificate and reregistration of the vehicle, Mr. Case testified, "I told him (Loyd) when he got around to it to make the transfer, that is, so that things would be in order. He said he would." (This was never done.) Mr. Case further testified: "Q. Did you at any time tell Mr. Loyd his use of the automobile was restricted to any particular area? A. I did. Q. When was that? A. When he took possession of the car. Q. What did you tell him? A. I told him he could drive it back and forth to home and down to the bank and to the post office or wherever I would send him. Q. And you told him that his use of the car was restricted for that purpose? A. That is what I told him. That was the conversation."

Appellant Case devotes much of his brief to argument as to the effect of an informal sale, or agreement of sale, and the liability of the registered owner under section 402 of the Vehicle Code when a sale has been agreed upon but the statutory requirements of indorsement and delivery of the ownership certificate or notification of the Department of Motor Vehicles have not been complied with. It is argued (1) that there was no contract of sale, (2) that the existence of an agreement of sale does not *per se* constitute permission by the owner for the buyer to operate the vehicle without restriction, (3) that if such a contract existed, a right of possession in the buyer does not necessarily follow. The academic soundness of the arguments is not the point here. The sole question, again, is whether the record contains any substantial evidence to support a finding that Mr. Loyd, in operating the automobile for his private purposes,—driving to Berkeley in the interests of his son's scholastic pursuits—did so without the permission, express or implied, of Mr. Case, the owner of the vehicle. It must be held that the evidence supports only one conclusion, that defendant Loyd was operating the vehicle with the permission of defendant Case. No trier of fact, considering the testimony of defendant Case, substantially corroborated by that of his employee Harris, could reasonably come to any conclusion other than that any previous restrictions upon Loyd's use of the car were no longer in effect after Loyd and

Case had made their "deal" whereby Loyd was to buy the car. Appellant Case's testimony amounted to an admission that he "considered the car Loyd's." We are not here concerned with the actual state of the title to the vehicle, but with the state of mind of defendant Case, who "considered the car Loyd's" and told Loyd "when he got around to it to make the transfer." To hold that in the circumstances presented there could be any doubt as to Loyd's unrestricted permission to use the vehicle as he saw fit would be to uphold a finding based upon no substantial evidence and against the unqualified admission of the party concerned.

Even viewing the evidence solely in the light of the testimony of Loyd, it is clear than an understanding was reached that Loyd was to purchase the vehicle. This understanding, coupled with possession of the vehicle by Loyd, not only warrants, but, considering all the evidence, compels, the inference that thereafter the vehicle was operated with the permission of defendant Case.

█ It is firmly settled that an agreement of sale coupled with transfer of possession, irrespective of compliance with the provisions of the Vehicle Code regulating the mode of transfer, operates as a consent and permission to the vendee to use the car in the way in which such property is customarily used and for all reasonable purposes. (*Weinberg* v. *Whitebone*, 87 Cal.App.2d 319 [196 P.2d 963]; *Bunch* v. *Kin*, 2 Cal. App.2d 81 [37 P.2d 744]; *Votaw* v. *Farmers Auto. Inter-Ins. Exchange*, 15 Cal.2d 24 [97 P.2d 958, 126 A.L.R. 538]; *Ferroni* v. *Pacific Finance Corp.*, 21 Cal.2d 773 [135 P.2d 569]; *Gutknecht* v. *Johnson*, 52 Cal.App.2d 315 [144 P.2d 854].)

█ We deem it appropriate, in connection with the two contentions hereinbefore discussed, to reemphasize that in passing upon the propriety and legality of granting a motion for a directed verdict, neither this court nor the trial court is authorized to weigh evidence or determine where the preponderance lies. When the trial court has granted a nonsuit, directed a verdict, or entered judgment notwithstanding the verdict, the function of the appellate tribunal is to determine whether there is any *substantial* evidence to support a verdict contrary to that directed. In other words, we are not authorized to weigh the evidence, but are limited solely to considering the same for the purpose of determining whether any *substantial* evidence appears which would, in the instant case, support a verdict contrary to that directed. It is stated

in *James* v. *White Truck & Transfer Co.,* 1 Cal.App.2d 37, 40 [36 P.2d 401], "To warrant a court in directing a verdict, it is not necessary that there should be an absence of conflict in the evidence, but, to deprive the court of the right to exercise this power, if there be a conflict, it must be a *substantial* one." (Emphasis added.) Had the jury herein found in favor of Case on the issues of contributory negligence or permissive use, the trial court would have been bound to set the finding aside. As was said by this court in *Washer* v. *Bank of America,* 87 Cal.App.2d 501, 506 [197 P.2d 202], "It is likewise settled that the trial court may direct a verdict 'where the evidence is undisputed or is of such conclusive character that the court, in the exercise of a sound judicial discretion, will be compelled to set aside a verdict returned in opposition to it." (*Wilkinson* v. *United Railroads,* 195 Cal. 185, 204 [232 P. 131]), quoting from *Davis* v. *California Street C. R. R. Co.,* 105 Cal. 131 [38 P. 647].)" Here, as in the Washer case, *supra,* we hold that only one conclusion is legally deducible from the evidence, and that any decision other than that arrived at under the direction of the trial court would have been so lacking in evidentiary support that an appellate court would be impelled to reverse it upon appeal.

Since, as we have hereinbefore indicated, the verdicts rendered by the jury (the question of the amount of damages is not here involved) against the owner and the driver of the vehicle are the only verdicts supported by substantial evidence, it becomes unnecessary to consider many of the assignments of error raised by appellant Case. Any errors in the admission of evidence or rejection thereof, in the restriction of cross-examination or in the asserted "injudicious solicitude for plaintiffs" charged against the trial court, afford no ground for reversal, by reason of the provisions of section 4½ article VI, of the Constitution of California.

However, certain other points raised by appellant Case require consideration.

■ It is urged that the court abused its discretion in denying Case's motion to reopen the case to enable him to strike the "irresponsive, *self-serving* conclusion of witness, F. W. Case." (Emphasis added.) It appears that this motion was not made until after all the evidence was in and the trial court announced its conclusion to instruct the jury that Loyd had "permissive use" of the vehicle. Counsel for appellant Case then stated that he had not heard such answer from the witness, and moved to strike as above stated. Appel-

lant Case asserts that the trial judge, with ''cruel injudiciousness,'' replied: ''No, you are not going to do that. You have rested, the evidence is all in and we take it now as it is. If you are going to sleep during the evidence you cannot open it up to move to strike out important bits of evidence, because that is perfectly competent. It is out of the question. I would not have opened it up for discussion if I had the slightest idea of reopening the evidence. I brought up the subject for discussion because the evidence was closed, you had rested, and there is no reason why it should be reopened, because it is the undisputed evidence of Mr. Case as to the sale, and that carries with it the undisputed deduction, the only deduction, we can draw from that is that he gave Mr. Loyd the right to use it wherever he pleased. The law still holds him responsible while he is the registered owner; but for him to say in one breath he made the agreement with Mr. Loyd under which he was to buy the car and that he considered that after that it was Mr. Loyd's car, and in the next breath to say there is any dispute on permissive use—'I now deny that he had the right to drive it wherever he pleased'—it is an impossible position for him to take.''

It has long been the established law that the granting or denial of such a motion is committed to the sound discretion of the trial judge. We are not here confronted with the case of an unresponsive answer by a witness, but an admission by a party under direct examination by his own counsel. Appellant Case's counsel urges that because he was suffering from a severe cold, he did not hear the answer given by the witness to a direct interrogatory propounded by counsel, cannot be made the basis for holding that the trial court abused its discretion in refusing to reopen the case. The answer was pertinent to a fundamental issue—that of permission. To have granted a motion to strike such testimony, not on the ground that the witness did not give it, but on the ground that the latter's counsel did not hear it, would amount to striking concededly competent evidence of a party's admissions. The court acted well within its discretion in denying the motion to reopen the case for the avowed purpose of accomplishing just that.

The contention of appellant Case that the court erred ''in excluding appellant's (Case) cross-examination of defendant Loyd,. and independent evidence of his verbal acts and admissions, concerning his interest in appellant's car,'' is without merit. Appellant offered to prove in this connection

only that Loyd had told two people, prior to the accident, that he had bought the Plymouth automobile from Case. There was no offer to prove that the purchase was conditional or that it was coupled with restrictions upon the use of the car. The proffered testimony was, if anything, adverse to appellant. Nor can error be predicated upon the exclusion of evidence that Loyd told Mrs. Case on the eve of his departure for Berkeley that he intended to go by train. The probative value, if any, of this evidence, under the issues in the trial, is too slight to justify serious consideration of the alleged error as a ground for reversal.

The remaining grounds of reversal urged by appellant Case have been considered, but do not require determination in view of our conclusions upon the two main issues hereinbefore discussed. None of the asserted errors could have affected the outcome of the trial. (Cal. Const., art. VI, § 4½.)

The judgments appealed from are, and each is, affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied September 11, 1950, and appellants' petition for a hearing by the Supreme Court was denied October 19, 1950.