[Civ. No. 6046.   Fourth Dist.   June 9, 1960.

GOLDA I. MARSHALL, as Administratrix, etc., Respondent, v. A. G. (BUD) PARKES et al., Defendants; ROXY HAGOBIAN BLAKE, as Executrix, etc., et al., Appellants.

C. C. Virtue, L. Kenneth Say and Vincent D. Todisco for Appellants.

Docker & Docker and James H. Perkins for Respondent.

COUGHLIN, J.—C. E. Marshall sued the defendants A. G. Parkes, Matt Blake and Gregg A. Yazijian as joint adventurers, to recover rental which he claimed was due him under an alleged crop lease and for the value of services rendered and of water, power and equipment furnished.

The complaint herein alleges that in December, 1954, by written agreement, Marshall crop-leased 320 acres of land from a land company, on a one-eighth share basis, for a period of 11 years; that on July 18, 1957, Marshall, by oral agreement, subleased 100 acres of that land to Parkes for the purpose of raising a potato crop thereon; that Parkes agreed to "pay the rental for said real property"; that on September 9, 1957, Parkes, Blake and Yazijian entered into a joint adventure to produce, harvest and sell the potatoes to be grown on the 100 acres, and agreed that the rental for said real property was to be an expense of the joint adventure; that the defendants subsequently harvested and sold the crop of potatoes and have failed to account to Marshall for "said one-eighth share of said gross crop proceeds." The complaint also alleges that Marshall agreed to provide water, power and equipment and to perform labor in the production of said crop for which Parkes agreed to compensate him; and that Marshall furnished the water, power, equipment and labor aforesaid, but has not been paid therefor.

Subsequent to the filing of the complaint, Marshall died and his administratrix was substituted as party plaintiff. Blake also died and his executrix was substituted in his stead.

All of the defendants were served with the complaint and summons; Parkes defaulted; the defendants Blake and Yazi-

jian answered; the case was tried as to them; and the judgment against all of the defendants was entered in the sum of $11,100. From this judgment the defendants Blake and Yazijian appealed.

At the trial the lease agreement between Marshall and the land company was established by a written lease between these parties. Among other things, this lease provided for a yearly "cash rental equal to one-eighth part of the *gross sums received* by the Lessee from the sales of all . . . farm products produced on the leased premises . . ."; and that no part of the leased premises shall be subleased without the written consent of the lessor. (Emphasis added.)

The evidence established that Parkes went into possession of the 100 acres of land; that a potato crop was grown thereon; that Marshall furnished water, power, labor and equipment, which the court found was of the reasonable value of $1,800; and that the crop of potatoes was harvested and sold. There is no direct evidence as to the terms of the oral agreement between Marshall and Parkes. Neither is there any evidence as to the amount received for the sale of the potatoes.

The joint adventure agreement, evidenced by a written instrument executed by the defendants, among other things, provided that "the land rental *heretofore paid* by Parkes is an expense to be charged to said joint adventure." (Emphasis added.) Under this agreement, Blake and Yazijian paid Parkes $1,500, assumed a $2,200 fertilizer bill, and agreed to make further advancements, with a limitation that the total cost of the operation should not exceed $190 per acre. Parkes was to furnish all labor incident to the adventure and was to receive one-half of the profits. Participation by the other two joint adventurers was limited to their financial contribution and they were to receive the remaining one-half of the profits. Losses were to be shared in the same ratio.

The plaintiff called a witness by the name of Rank, a rancher who had been engaged in the potato business for four years and was acquainted with the 100 acres of potatoes in question, who testified that this crop and his own crop were processed at the Canejo Elkhorn Shed, and estimated that 150 sacks of potatoes per acre were produced on this land, of which 90 sacks would be United States A-1 grade; 30 to 35 sacks would be United States A-2 grade; 10 to 15 sacks would be B grade; and the remainder would be culls. Rank had sold potatoes during the 1957-1958 season and testified that the price range per sack during that season for United States A-1 grade

potatoes was from $2.25 in the fall of 1957 to $7.50 in the spring of 1958, delivered in Los Angeles; that for United States A-2 grade the price range was from $1.75 to $4.50 per sack; and on B grade from 75 cents to $3.50 per sack. The witness was permitted to use a bulletin issued by the U. S. Department of Agriculture to assist him in giving his opinion as to prices. He had been paid for his potatoes in accord with this bulletin. There was no evidence as to the time when the potatoes in question were sold. As a mathematical deduction, using the maximum figures given by Mr. Rank as to quality, quantity and price, the total price for which these potatoes might have been sold during the 1957-1958 season was $87,500, whereas when using the minimum figure as given by that witness, the total price would be $26,250. No direct evidence of the quantity of potatoes sold, the price paid therefor, or the amount received from such sale, was offered by either party. The court found that the value of the crop was $74,400 and awarded plaintiff $9,300 as Marshall's share, based upon the further finding that Parkes agreed to pay Marshall the rental for the 100 acres, "being one-eighth gross crop share of the potatoes to be grown on said land," and that the joint adventure agreement provided that the rental in question was to be an expense of the joint adventure.

The appealing defendants did not raise any contention in their briefs respecting the award of $1,800 for labor, equipment, water and power furnished the joint adventure by Marshall. The evidence establishes that these items were furnished during the time the joint adventure was in existence and adequately supports the finding made by the court. The serious question presented by this appeal is the sufficiency of the evidence to sustain the finding respecting the land rental issue.

The pretrial order presents a confusing situation. It is stated therein that one of the issues to be determined was: "Did the defendant A. G. (Bud) Parkes enter into the oral agreement as contended by the plaintiff herein." However, it also is stated therein that the parties agreed that Marshall and Parkes "entered into an oral agreement" for the farming of the 100 acres to produce a crop of potatoes. At the trial the defendants contended that they did not intend to stipulate to the existence of any agreement between Marshall and Parkes. The trial judge expressed his intention not to hold them to a stipulation entered into by mistake. On the other hand, the evidence adequately establishes that Marshall and Parkes did

enter into an agreement respecting the use of the land to grow a potato crop thereon. Parkes went into possession of this property and raised a crop of potatoes; Marshall assisted him in doing so; and Parkes harvested the potatoes and sold them. It hardly can be suggested that Parkes was a trespasser. The inference that he was on the property by agreement is well supported by the evidence. On the other hand, the terms of that agreement are wholly lacking. The plaintiff contends that the rental term is supplied by inference; that Marshall must have subleased on the same terms as expressed in the master lease; that he would not have leased for less than he was required to pay; and therefore Parkes must have agreed to pay him one-eighth of the crop. This contention is based on conjecture and surmise. Strangely enough, the pleadings in this case point to a reason why the suggested inference has no legal foundation. In substance, the complaint alleges that Parkes agreed to pay the rental which Marshall was required to pay, i.e., to pay the *land company* one-eighth of the *gross proceeds received,* but the findings declare that Parkes agreed to pay *Marshall* "one-eighth gross crop *share of the potatoes to be grown.*" (Emphasis added.) Proof of the existence and the terms of the original lease between Marshall and the land company do not authorize a deduction that Parkes agreed to pay Marshall one-eighth of the crop of potatoes to be grown any more than it authorizes a deduction that Parkes agreed to pay the land company the rental due under the original lease. There are other factors which highlight the unreasonableness of the conclusion for which plaintiff contends. Marshall did not agree to pay the land company one-eighth of the crop he produced. He agreed to pay one-eighth of the gross sums received by him from the sale of those crops. If he received a very low price for these crops he paid only one-eighth of that price; not one-eighth of the highest price obtainable, nor one-eighth of the market value of the crops. To conclude from the evidence that Parkes agreed to pay Marshall one-eighth of the "gross crop share of the potatoes" is mere speculation. If a lack of evidence furnishes the basis for inference, it is equally proper to assume that Marshall complied with his lease and obtained written permission from the land company before subletting to Parkes and that, as a part of this proceeding, the rental terms were modified. The evidence would support a conclusion that a cash payment in advance constituted the agreed rental. The original lease provided that the land company might terminate it in the event the

annual rental fell below $700 per year, and that company may have been willing to accept this sum as rental. It may have been such a sum that was referred to in the joint adventure agreement wherein it was stipulated that the *"rental heretofore paid"* by Parkes would be an expense of the joint adventure.

An inference is such a deduction from a fact legally proved "as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business, or the course of nature." (Code Civ. Proc., § 1960.) ■ ■ Whether a particular inference can be drawn from certain evidence is a question of law for determination by the court, but whether the inference shall be drawn, in any given case, is a question of fact for determination by the trier of fact (*Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868]; *People* v. *Engelhart*, 78 Cal.App.2d 6, 8 [176 P.2d 789]; *Garland* v. *Hirsh*, 74 Cal.App.2d 629, 636 [169 P.2d 405]), and where the uncontradicted evidence "establishes the impropriety of the inferences drawn by the court from the uncontroverted facts" a finding based thereon is not supported by the evidence. (*Estate of Tarrant*, 38 Cal.2d 42, 51 [237 P.2d 505, 28 A.L.R.2d 419].)

In the case at bar the issue on appeal is not whether the court was entitled to draw one of several inferences, but whether the evidence justifies the drawing of any inference. ■ Where the evidence is such that it is a matter of conjecture whether the usual propensities of men, or the course of business, warrant a particular deduction from proven facts, the circumstances do not furnish a basis for a legally sufficient inference. ■ To support a finding, "the inference or inferences indulged in must be reasonable, must be based on the evidence, and cannot be the result of mere guess, surmise or conjecture" (*Oregon etc. Freight, Inc.* v. *Fruehauf etc. Co.*, 83 Cal.App.2d 620, 624 [189 P.2d 329]; *Bardin* v. *Case*, 99 Cal.App.2d 137, 142 [221 P.2d 292]; *Farmer* v. *Fairbanks*, 71 Cal.App.2d 70, 80 [162 P.2d 26]), or "be based on imagination, speculation or supposition." (*Dull* v. *Atchison, T. & S. F. R. Co.*, 27 Cal.App.2d 473, 476 [81 P.2d 158].)

■ There is no evidence in the case at bar from which the terms of the alleged lease between Marshall and Parkes legally can be inferred.

■ The plaintiff contends that, in any event, the judgment should be sustained on the theory of unjust enrichment;

that the joint adventurers received a benefit from the use of the land and should be required to compensate Marshall therefor. This theory was presented for the first time on appeal. The pleadings do not sustain it; the complaint is based on the violation of an express oral contract and not upon a contract implied by law. Recovery was granted on the basis of an express contract; upon the right to receive one-eighth of the potato crop; and not upon the reasonable value of the use of the land. Under the theory of unjust enrichment, the defendants would be required to compensate plaintiff for the reasonable value of the use of the land in question. However, there is no allegation or finding respecting such value. The contention of the plaintiff in this regard is without merit. (*Panopulos* v. *Maderis,* 47 Cal.2d 337, 340 [303 P.2d 738]; *Gibson Properties Co.* v. *City of Oakland,* 12 Cal.2d 291, 299 [83 P.2d 942]; *Fruitvale Canning Co.* v. *Cotton,* 115 Cal. App.2d 622, 627 [252 P.2d 953].)

The defendants also object to the amount of the damages awarded by the trial court, contending that the only evidence with respect thereto is speculative. However, the conclusion heretofore noted renders a consideration of this contention unnecessary.

The judgment is reversed with respect to the claim for rental and is affirmed with respect to the claim for services, water, power and equipment furnished, and the case is remanded to the trial court for such proceedings as may be proper in the premises commensurate with the views expressed in this opinion. Appellants will recover costs on appeal.

Shepard, Acting P. J., concurred.