(Surrogate's Court, Dutchess County. December, 1902.)

**1. Express Trust—Validity.**
   Where a mother opened a savings bank account in trust for her daughter, and thereafter frequently stated that she had a bank book for the daughter, which was to be hers after her death, the fact that she did not inform the daughter of the trust thus created, and retained the bank book, and during 19 years often made large withdrawals from the deposit, was insufficient to invalidate the trust.

**2. Same—Liability of Donor.**
   Where a mother makes deposits in a savings bank in trust for her daughter, and continues the control of the trust for 19 years, until her death, the fact that pending that time the mother withdrew large sums from the fund does not render her estate liable to the daughter for the amount of such withdrawals.

**8. Executrix—Expenses.**
   An executrix cannot recover from the estate traveling expenses not necessary to performance of her duties.

In the matter of the accounting of Katie Biggars, executrix of Catharine Werner, deceased. Decree rendered.

C. Morschauser, for executrix.

Homer E. Briggs, for guardian ad litem.

James E. Carroll, Allison Butts, A. M. & G. Card and Frank J. Connelly, for legatees.

HOYSRADT, S. The legatees under the will of Catharine Werner have filed objections to the account of the executrix claiming that she should not be credited with an item of $500, alleged to be due her from the testatrix, nor with $115 for personal expenses, and that she should be charged with $2,286.34, which was deposited in the Poughkeepsie Savings Bank in the name of "Catharine Werner, in trust for Katie Hydrant." The executrix is at various places in the record referred to as Katie Werner, Hydrant, Williams, and Biggars. Catharine Werner, who had for many years been a widow, died January 25, 1901, at the age of 85. She left a will, which was admitted to probate in this court. By this will no general legacy is provided for the two daughters of the deceased, and it is evident that the testatrix assumed that she had made suitable provision for them in her lifetime. On July 8, 1882, Catharine Werner deposited $300 in the Poughkeepsie Savings Bank in the name of "Catharine Werner, in trust for Katie Hydrant." From the date of the first deposit to January 8, 1901, the bank book shows that 45 deposits, varying in amount from $19 to $300, were made and credited to this account and during the same period $460 was withdrawn October 6, 1887; $450, January 7, 1888; $200, April 28, 1888; $765, May 5, 1888; $500, February 18, 1898; and $500, April 16, 1898. The balance remaining in the account at Mrs. Werner's death was $2,286.34, which, on February 11, 1901, was paid to the beneficiary, Katie Biggars. Previously to the opening

¶ 8. See Executors and Administrators, vol. 22, Cent. Dig. § 443.

of this account Mrs. Werner had an individual account at the same bank,—No. 20,822,—which, at the time of the opening of the trust account, was $4,206.74, and the excess of $3,000 was earning no dividend. It appears to have been her intention in withdrawing the $1,200 from the individual account, July 8, 1882, to reduce it to the amount limited by the rules of the bank for earning capacity, but she only deposited $300 in the trust account at that time. Some of the items of the trust account indicate that they are transfers of interest from other accounts. While there is some evidence of Mrs. Werner's effort to obtain interest on the whole of her accumulations, it is quite apparent that at the time of opening the trust account with a deposit of $300, she intended to establish a trust fund for the benefit of her daughter Katie. The evidence shows that this daughter married in 1875, went to England about 1881, returned several years afterward, and, after living home for two years, went to Chicago, where she resided until her mother's death. Mrs. Werner gave her daughter Sophie $1,000, and while Katie was at Chicago offered to send her $500, but at Katie's request postponed the gift. Mrs. Werner and her daughter Katie were frequently seen at the savings bank in question together, presumably in the period of two years when the daughter was home. Among Mrs. Werner's neighbors was the Steitz family, of German nationality, like herself, and at their house she frequently spoke of her family and her property. She said that her boys were reckless in some ways, and did not please her, but that she had given them their property alone, and the girls theirs alone, and had given them as much as she could, so, as she expressed it, "They couldn't claim the girls' property." She there frequently stated also that she had a bank book for Katie in the Poughkeepsie Savings Bank, which was to be hers (Katie's) after her (Mrs. Werner's) death. She said Katie had never had any assistance from her, where the others had, as she had left home young. She also said she had deeded a house to Katie, with a provision that Katie should pay to Sophie, another daughter, $1,000. I find the value of this property to be $2,700. In the Lauer household Mrs. Werner on numerous occasions spoke of her property, and the disposition she intended making of it. Mrs. Lauer expressed disapproval of compelling Katie to pay Sophie $1,000 from the Montgomery street property, to which Mrs. Werner replied that she had Katie well provided for by a deposit in the savings bank in trust for her. To Mrs. Schattle a similar declaration was made. With this evidence of Mrs. Werner's intention of providing for her daughter, I cannot find that she merely opened the account in question to get interest on the excess of $3,000 of her savings, notwithstanding that she retained the bank book and made withdrawals. It is evident that in these conversations Mrs. Werner did not refer to her daughter's individual account, as it appears that she always referred to a trust account, and spoke of it as being in her control until her death. It does not appear that Katie's individual account was in any manner in the control of her mother. The evidence of disposition of money withdrawn from the various accounts is too vague for adoption, and no substantial inference can be drawn from the fact that the will, executed May 26, 1898,

provided for legacies of $3,025, when the testatrix had but $3,000 in her own name.   The will contains no residuary clause, and it was the evident intention of the testatrix to dispose of the whole of her personal estate of $3,000 without regard to her funeral expenses.   Any inference to be drawn from the will itself favors a finding that Mrs. Werner did not regard herself as the owner of the trust account.

I am of the opinion that the estate of the trustee is not, under the facts and circumstances of this case, chargeable with the withdrawals, as she was under no obligation to the beneficiary to maintain the fund at the highest point it might reach; and for the further reason that it appears that on the same day—April 16, 1888—$500 was withdrawn from the trust account, and the same amount was deposited to Katie's credit in her individual account, and there are indications that she had the benefit of other withdrawals.   After declaring the original trust of $300, and with no intention shown on the part of the trustee to permanently establish a fund larger than the balance remaining at her death, it would be manifestly unjust to take practically all of her estate to restore the money withdrawn from the trust account.   The cases where such relief has been allowed presented situations vastly different than the one in the case at bar.   The contestants have raised the question that, if the trust account was made for the daughter's benefit by taking $500 from it and depositing it to the credit of her individual account, she was being paid with her own money; but the circumstances show it to have been an advancement, and the fulfillment of the proposed gift which the beneficiary might enjoy in the donor's lifetime.   It is not essential that the property should be actually possessed by the cestui que trust, nor that the latter should be informed of the trust.   The retention of the pass book by the trustee is not inconsistent with the completeness of the gift.   Martin v. Funk, 75 N. Y. 134, 31 Am. Rep. 446.   In Mabie v. Bailey, 95 N. Y. 206,—one of the leading cases on this subject,—the enjoyment of the benefits of the trust was postponed until the beneficiaries reached suitable age.   In this case the trustee had a large number of deposits in his name as trustee for various persons, enabling him to receive more dividends.   The deposit in question was made in 1864, and withdrawn by the trustee in 1867.   The court held that an irrevocable trust was established through proof of the deposit, the exhibition of the pass book to the beneficiary, and his declaration that "the deposits for the children were large enough to amount to something when they grew up," and "would do them more good hereafter."   In Willis v. Smyth, 91 N. Y. 297, U. deposited money in trust for her daughter.   The original deposit was subsequently withdrawn, and later the account was again opened by a deposit of $2,000.   There was no independent declaration, and, notwithstanding that, the trustee drew the interest, and offered to loan the money.   It was held that the transaction disclosed an intention to establish a trust.   In Beaver v. Beaver, 117 N. Y. 428, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531, Beaver deposited money in the name of his son.   There was no declaration of trust in terms when the deposit was made, nor at any time thereafter,

and it was held that none would be implied from a deposit by one person in the name of another, and that no gift was established. In Cunningham v. Davenport, 147 N. Y. 43, 41 N. E. 412, 32 L. R. A. 373, 49 Am. St. Rep. 641, where it was held that no trust was established, plaintiff made a deposit in trust for his brother. The latter died without having been informed of the account, and the depositor was alive, denying the trust. Practically the same state of affairs existed in Haux v. Institution, 2 App. Div. 165, 37 N. Y. Supp. 917. The doctrine of the court of appeals, as stated in Cunningham v. Davenport (at page 47, 147 N. Y., page 413, 41 N. E., 32 L. R. A. 373, 49 Am. St. Rep. 641), is that the act of a depositor in opening an account in the savings bank in trust for a third party, the depositor retaining possession of the bank book, and failing to notify the beneficiary, creates a trust if the depositor dies before the beneficiary, leaving the trust account open and unexplained. If the intent can be strengthened by acts and declarations of the depositor in his lifetime amounting to publication of his intent, a more satisfactory case is made out; but it is not absolutely essential, in the absence of explanation, where he dies leaving the trust account existing. In Washington v. Bank, 171 N. Y. 166, 63 N. E. 831, the supposed beneficiaries were found by the jury to be fictitious, and no new principle was enunciated on the appeal. In Re Mueller, 15 App. Div. 66, 44 N. Y. Supp. 280, there was proof showing the intention of the depositor not to devest himself of title. In Decker v. Institution, 15 App. Div. 553, 44 N. Y. Supp. 521, one Dubois made a deposit in trust for his sister, and subsequently stated that he had given plaintiff four thousand and odd dollars, and said she knew of it. The court held that it was clearly his original intention to establish a trust, and, notwithstanding an entire change of circumstances, the trust was upheld. In Williams v. Bank, 51 App. Div. 332, 64 N. Y. Supp. 1021, it was held that the opening of an account by one person in trust for another establishes prima facie an intention to create a trust, and that the retention of the pass book by the trustee, his failure to notify the beneficiary, and a withdrawal are not sufficient to establish a contrary intention. In this case there was no independent declaration of the depositor, but the account was simply open and unexplained at his death, and the court held that the trust was established from the original evidence of intention and proof of circumstances. In Robertson v. McCarty, 54 App. Div. 103, 66 N. Y. Supp. 327, it was held that a deposit in trust for depositor's brother, although the latter did not become aware of its existence until after the death of the depositor who had retained possession of the pass book, created an irrevocable trust; and, where it had been withdrawn by the depositor, and converted to his own use in his lifetime, it could be recovered from his legal representatives. The fund was established by one deposit of $3,000, and was wholly withdrawn. The same principles are upheld in Scallan v. Brooks, 54 App. Div. 248, 66 N. Y. Supp. 591, and Harrison v. Totten, 53 App. Div. 178, 65 N. Y. Supp. 725. In Meislahn v. Meislahn, 56 App. Div. 566, 67 N. Y. Supp. 480, a father deposited money in trust for his daughters, having ten deposits for one daughter, aggregating $26,000,

and stated that he had money in trust for the girls. He also said, in substance, that they could not get it until after his death. The funds were composed of numerous deposits, and the depositor drew the interest. The situation was nearest to the one in the case at bar that I have found. The court there held that a trust was established. In the most recent case—In re Totten, 38 Misc. Rep. 349, 77 N. Y. Supp. 928—there was no declaration of the depositor, as in the case at bar, and, while the circumstances proven in that case may justify it, the decision does not follow the line of cases in which Robertson v. McCarty, supra, is included. The case at bar belongs in the class where the trust has been upheld, and the executrix is not, therefore, chargeable with the amount of the deposit in question.

As to the next question involved it appears that Catharine Werner, as executrix of Valentine Werner, paid to Katie Biggars $500 from the funds of the estate of Valentine Werner, which my predecessor has decided was unauthorized, and, when Katie Biggars rendered her account as administratrix with the will annexed of Valentine Werner, she was charged with that payment. She now asks to have it established as a charge against the estate of Catharine Werner. In other words, Katie Biggars received, evidently as a gift, money which the donor did not own, and has been compelled to restore it. I know of no authority for enforcing her claim against the donor. No consideration is proven, and the only characterization which could be given to the transaction is an attempted or unexecuted gift, which is not enforceable.

As to the expenses of the executrix it appears that she came to Poughkeepsie from Chicago twice. The first occasion was to attend the funeral of her mother, and on the second she established a permanent residence in Poughkeepsie. It has not been shown that either trip was made necessary by the performance of her duties as executrix. The credits in her account of $500 by reason of the transaction referred to, and $115 for expenses, are therefore disallowed.

Decreed accordingly.