[L. A. No. 21113. In Bank. Mar. 14, 1951.]

KATE W. BRUCKS, Plaintiff and Appellant, v. HOME FEDERAL SAVINGS & LOAN ASSOCIATION (a Corporation) et al., Defendants; ADELE W. TAPLEY, as Executrix, etc., Defendant and Appellant.

Glendon L. Tremaine and Franklin L. Knox, Jr., for Plaintiff and Appellant.

McNulty & Squier and Ralph W. Squier for Defendant and Appellant.

SPENCE, J.—This action involves the determination of the ownership of certain funds on deposit[1] in the Home Federal Savings & Loan Association. The controversy is between plaintiff, claiming as the designated beneficiary on the account in question, and defendant Adele W. Tapley, claiming as executrix of the will of the deceased depositor. The savings and loan association was also named a defendant herein; it disclaimed any beneficial interest in the fund and deposited the money in court; and the action was dismissed as to it. Following submission of the cause, the trial court decreed that a valid trust had been created and that plaintiff was entitled to possession of the fund but only in trust for the benefit of the deceased depositor's son, who was not a party to this action. The two contesting claimants have appealed: plaintiff from that portion of the judgment declaring the beneficial interest of the depositor's son in the fund; and defendant Tapley from the judgment in its entirety.

As ground for reversal, both appealing parties urge that the trial court exceeded its jurisdiction in rendering judgment in favor of one not a party to the action (49 C.J.S. § 28, p. 68; *Stockwell* v. *McAlvay*, 10 Cal.2d 368, 376 [74 P.2d 504]; *Overell* v. *Overell*, 18 Cal.App.2d 499, 502 [64 P.2d 483]; *Samter* v. *Klopstock Realty Co.*, 31 Cal.App.2d 532, 535 [88 P.2d 250]; *Hutchinson* v. *California Trust Co.*, 43 Cal.App.2d 571, 575 [111 P.2d 401]), and accordingly, under this general rule, its adjudication of the beneficial interest of the depositor's son in the savings bank account as a trust fund cannot be sustained (*Bachman* v. *Sepulveda*, 39 Cal. 688, 689-690; *O'Neil* v. *Ross*, 98 Cal.App. 306, 323 [277 P. 123]). Defendant Tapley further contends that the evidence does not support the finding that the bank account was subject of a valid trust

---

[1]There was involved herein a savings share account in a federal savings and loan association rather than a deposit in a savings bank. The use in this opinion of the word "deposit" (see Home Owners Loan Act of 1933, § 5(b), 48 U.S. Stat. 128, 132) and the word "bank" (see Banking Code, §§ 3392-3393) follows the terminology found in the testimony and used by the parties in the briefs. The distinction between the two types of investment is wholly immaterial in the consideration of the points involved on this appeal.

at the time of decedent's death, and therefore the money on deposit therein properly belongs to the estate of the deceased depositor. The record shows her position to be well taken.

On July 7, 1947, Jeannette W. Kinkade, the decedent, opened an account with the Home Federal Savings & Loan Association in San Diego. The account was entitled "Kinkade, Jeanette W., in trust for Kate W. Brucks." According to the bank's records, the initial deposit was $1,500; on October 6, 1947, there was an additional deposit of $2,242.47; thereafter and between October 27, 1947, and February 6, 1948, five small withdrawals were made; and on the death of Mrs. Kinkade, February 10, 1948, the balance in the account was $3,087.37. No change was made in the form of this account and no subsequent instructions relative to its disposition were given to the bank.

Kate W. Brucks, plaintiff herein, was a second cousin of decedent, and they had been close friends for many years. Mr. Brucks, plaintiff's husband, testified that shortly after the account in question was opened in 1947, the deceased in his presence told his wife that she (deceased) had "put some money in the bank for" plaintiff.

The following letter was found in deceased's effects shortly after her death:                                          "Jan. 24, 1948.

"Dear Kate——

"I am sick and in case I should pass away, will you kindly look after my belongings?

"My bank book is in your name & mine.

"First thing draw out all the money & put it in your name.

"If there is anything left after all expenses are paid, will you kindly give the remainder to my son Frederic Kinkade. He needs it.

"I expect you to take money for all your expenses caused by this.

"Also if there is any pictures, bedding etc. he would want please let him have them.

With much love

Nettie

"My lace dress is in bottom of trunk also bank book.

"I wish to be buried in Kensico Cemetery by my husband and Dear Gladys.

Nettie

"Cedar Chest & small chair belong to me. They are for you."

The above letter was entirely written, dated, and signed by decedent. It was not mailed or delivered to the addressee.

On February 5, 1948, decedent executed a formal will, in which she revoked all prior wills, appointed Adele W. Tapley, her niece, as executrix, and gave to the latter the entire residue of her estate, to the intentional exclusion of her son Frederic.

Plaintiff Kate W. Brucks instituted this action to recover the balance of the bank deposit as a trust account for her benefit. In opposition to plaintiff's claim, defendant Tapley relied upon the instruments executed by decedent subsequently to the opening of the bank account as revoking any trust character that may have attached to the account, and maintained that the remaining balance thus became part of the assets of decedent's estate. In resolving the controversy, the trial court found that upon the opening of the bank account, a "valid trust" was created, wherein the deceased depositor "retained a life interest" and plaintiff was the beneficiary; that thereafter the trustor, having "reserved the right to change, alter, modify or revoke" the trust, did modify it by her letter of January 24, 1948, so that the beneficiary became Frederic Kinkade; that upon the death of the trustor, "legal title" to the funds on deposit vested in plaintiff, "as trustee" and in trust for Frederic Kinkade, the son of the deceased trustor; and that plaintiff was without right, title, claim or interest in or to said funds or any part thereof, except as trustee. The court further determined that the trust "has now terminated," and ordered plaintiff "as trustee . . . to pay over to Frederic Kinkade the residue of said trust," subject to the payment of a "reasonable fee for her services," taxes, if any, and all costs incurred in the administration of the trust and of this case.

The rights of plaintiff and defendant Tapley must be determined in relation to these principal points: (1) whether a trust in favor of plaintiff was created by decedent upon opening the bank account in question; and (2) if so, what effect decedent's subsequent acts may have had thereon.

The doctrine of "tentative trusts" created by deposits "in trust" for some person other than the depositor appears to be accepted law in this state. (*Kuck* v. *Raftery*, 117 Cal. App. 755, 757-759 [4 P.2d 552]; *Evinger* v. *MacDougall*, 28 Cal.App.2d 175, 179 [82 P.2d 194; *Estate of Alberts*, 38 Cal. App.2d 42, 47-48 [100 P.2d 538]; *Hyman* v. *Tarplee*, 64 Cal.App.2d 805, 812-813 [149 P.2d 453]; *Kosloskye* v. *Cis*, 70 Cal.App.2d 174, 177-180 [160 P.2d 565]; *Katz* v. *Greeninger*,

96 Cal.App.2d 245, 247-248 [215 P.2d 121].) In adopting such doctrine, the California decisions have followed the rule formulated in the oft-quoted case of *Matter of Totten,* 179 N.Y. 112 [71 N.E. 748, 1 Ann.Cas. 900, 70 L.R.A. 711], at page 752 [71 N.E.] : "A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor." ██ The determinative consideration is the matter of the intent of the depositor, and "this is a question of fact for the trier of the facts." (*Kosloskye* v. *Cis, supra,* 70 Cal.App.2d 174, 180; see, also, Restatement of the Law of Trusts, § 58, p. 181; Bogert, The Law of Trusts and Trustees, vol. 1, § 47, p. 202.) ██ Whether the form of the deposit, without other evidence, creates a "presumption" in favor of the trust relation or an "inference only" in that regard, as "the later New York cases [have] held," a "controverting demonstration" may be made either to show there was "no initial intention" to confer the claimed benefit or that, after the opening of the account with the requisite trust intent, the "sentiments of the depositor" on the matter changed. (*Kosloskye* v. *Cis, supra,* p. 180.)

██ In the present case there is the above-mentioned testimony of plaintiff's husband corroborating the trust purport of the form of the bank account as originally worded in plaintiff's favor. Consistent with this evidence of decedent's intent, the trial court found that the opening of the account created a valid trust. While defendant Tapley, as a premise for rebutting the trust purpose of the bank account to plaintiff's benefit, urges that the circumstances of the conversation attested by plaintiff's husband would sustain a different interpretation, the conflict was for the trial court to resolve and its finding cannot be successfully attacked. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)

██ There now remains for consideration the bearing of decedent's subsequent acts upon the continued existence of the trust. First in chronology is the above-quoted letter of January 24, 1948, some six months after the savings bank

account was opened. By that instrument decedent sought to change the terms of the original trust so that plaintiff, the former tentative beneficiary, became a trustee obligated to administer the fund for the benefit of a third person, decedent's son Frederic. Manifestly, such letter was a matter properly in evidence as showing the "sentiments of the depositor [had] changed" (*Kosloskye* v. *Cis, supra,* 70 Cal. App.2d 174, 180), a "declaration of disaffirmance" of the original terms of the trust made "during the lifetime of the depositor" (*Matter of Totten, supra,* 179 N.Y. 112 [71 N.E. 748, 752, 1 Ann.Cas. 900, 70 L.R.A. 711]). █ Plaintiff cites these factors as indicating that decedent never intended that the letter should take effect: it was never delivered or mailed to plaintiff, the addressee; and no different instructions were given to the bank in consequence of the alteration of the trust provisions. █ However, "a tentative trust of a savings deposit in a bank can be revoked by the depositor at any time during his lifetime, by a manifestation of his intention to revoke the trust. No particular formalities are necessary to manifest such an intention." (Restatement of the Law of Trusts, § 58, comment b, p. 183.) █ Consistent with this principle, decedent, by her subsequent letter, simply exercised her reserved right of revocation with respect to any original trust in plaintiff's favor, and no further act would be required to effectuate the purport of the letter as a disaffirmance of such trust. (*Cf. In re Bearinger's Estate,* 336 Pa. 253 [9 A.2d 342, 343].)

█ The trial court further construed decedent's letter to effect a valid modification of the original trust and the disposition of the money in the bank account. By its express language, the letter directs plaintiff "in case [decedent] should pass away," to "draw out all the money," "put it in [plaintiff's] name," and "after all expenses are paid," "give the remainder to [decedent's] son Frederic Kinkade." Whether such writing, unless executed in conformity with testamentary formalities, should be given effect in the disposition of decedent's bank account under an extension· of the "tentative trust" doctrine (*cf. In re Bearinger's Estate, supra,* 336 Pa. 253 [9 A.2d 342, 343]) need not be here decided, for decedent's letter was wholly written, dated, and signed by her; and as such, it met the requirements of an holographic will. (*Estate of Button,* 209 Cal. 325, 332-333 [287 P. 964].)

That decedent wrote the letter with the avowed purpose of arranging her affairs after her demise is not open to question.

In addition to the above-cited references with regard to the handling of decedent's bank account upon her death, the letter makes the following provisions: (1) it assigns to plaintiff the duties of an executrix in directing her to "look after [decedent's] belongings" and to give to decedent's son Frederic certain articles of personal property as "he would want"; (2) it authorizes plaintiff, presumably from the bank account in question, to "take money for all [her] expenses" in the administration of decedent's estate; (3) it bequeathes a "Cedar Chest & small chair" to plaintiff; and (4) it requests that decedent "be buried" in a designated cemetery. Such instrument unmistakably shows that at the time of its execution, decedent was undertaking to make a complete transfer of her personal estate, to take effect after her death, and that she then intended plaintiff's benefit in her property to be limited to the mentioned specific bequest and to compensation for administrative services. The provision for the disposition of the bank account appears to be part of decedent's then testamentary plan as carried into her letter. (*Estate of Button, supra,* 209 Cal. 325, 331.)

However, the force of decedent's letter of January 24, 1948, as a testamentary disposition of her property is nullified by her execution of a formal will some twelve days later, February 5, whereby she expressly revoked all prior wills. By the later instrument decedent makes a wholly different disposition of her property, intentionally excluding her son Frederic from any share in her property and bequeathing all of her estate, both real and personal, to defendant, her niece, naming her as executrix. It is true that decedent made no express mention of her bank account in the later will, and that it has been held that a mere residuary bequest, as distinguished from a specific bequest of the fund (*In re Ryan's Will,* 52 N.Y.S.2d 502, 508), will not effect a revocation of a tentative trust (*In re Richardson's Estate,* 134 Misc. 174 [235 N.Y.S. 747, 754]; *In re Pozzuto's Estate,* 124 Pa.Super. 93 [188 A. 209, 210]). But here by the later will, decedent apparently abandoned her entire former testamentary plan, as to both dispositive and administrative provisions, and the wholly inconsistent distribution and management of decedent's estate contemplated under the terms of the letter as a testamentary document cannot stand in the face of the later will's plain expression of decedent's intent to revoke thereby all prior wills.

The trial court, in holding that the letter constituted a valid

modification of the trust and should be so enforced, was impressed by this consideration, as indicated by its memorandum opinion filed in this case and made a part of the record on appeal: Decedent's failure to make provision for her son in her later formally executed will was consistent with her belief that she had already provided for him by the terms of her letter, and no further references would be necessary in order to have him take the "trust" money. But it is not reasonable to assume from the content of the two testamentary writings—each in itself expressing a complete testamentary plan in the disposition and administration of decedent's property—that decedent, upon expressly revoking all prior wills, did not intend the will later in chronology to indicate her deliberate abandonment of the former testamentary plan.

Nor does it appear that decedent may not have had the letter in disposition of the bank account in mind as a testamentary instrument when she executed the later will expressly revoking all prior wills. (*Cf. In re Pozzuto's Estate, supra,* 124 Pa.Super. 93 [188 A. 209, 210].) The letter of January 24, 1948, was wholly testamentary in character, wherein the modification of the trust bank account was but one of the several dispositive provisions regarding various items of decedent's property and designation was made of the person, plaintiff, to carry out decedent's testamentary wishes and "look after [her] belongings"; then followed the formal will of February 5, but twelve days later, wherein deliberate repudiation was made not only of the former testamentary bequests but likewise of the prior nomination of plaintiff to administer the decedent's effects. Under such circumstances, it is only reasonable to conclude that decedent must have realized the testamentary significance of the successively executed instruments in their respective forms, coincident with her express declaration revoking all prior wills. Moreover, there is no evidence of any independent declarations of trust on the part of decedent with respect to the bank account, suggestive of any intent on her part to separate such account from the general provision of her formal will of February 5 in effecting the distribution of her property (*cf. In re Biggars,* 39 Misc. 426 [80 N.Y.S. 214, 215]) ; and as the bank records show, decedent, consistent with her continued retention of absolute control over the account, made a withdrawal therefrom on February 6, indicating her appreciation that the account was part of her property and that it was subject to her disposition. On February 10, 1948, the date of decedent's

death, the will of February 5 stood as the latest expression of her testamentary wishes and in revocation of all prior wills. To refuse to give this later will effect would run counter to decedent's plain manifestation of testamentary intent in the disposition of her property.

In the light of these observations, the conclusion is inescapable that the trial court erred in sustaining the operative effect of the letter of January 24 with relation to the bank account, in disregard of the express revocatory clause contained in the later formal will of February 5; and defendant Tapley properly maintains that she is entitled to possession of the funds on deposit in the disputed bank account as part of the assets of decedent's estate.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.

The opinion was modified and plaintiff and appellant's petition for a rehearing was denied April 13, 1951.