[Civ. No. 7113.   Fourth Dist.   June 24, 1963.]

FREDERICK H. MILLER, JR., Plaintiff and Respondent, v. FREDERICK H. MILLER, Defendant and Appellant.

Guy Richards Crump and W. L. Engelhardt for Defendant and Appellant.

Harry R. Carlton for Plaintiff and Respondent.

CONLEY, J.*—The litigants are father and son. Frederick H. Miller, Jr., sued Frederick H. Miller, alleging that the defendant was trustee of an express trust made up of property which had been accumulated by the trustee over a period of some 19 years. The plaintiff was awarded judgment against his father in the sum of $5,319.66, besides $3,512.08 interest and costs of $113.61.

Plaintiff's mother testified that in 1938, when he was two years old, his grandfather gave him $25 as a birthday present. The defendant and his wife (who have been divorced since 1955) agreed to start a savings account for the son in that amount, and the father did, in fact, open an account with the Bank of America in the name of "Fred H. Miller (trustee) for Fred H. Miller (a minor)." For the next few years the account stayed in the same form, except for interest and the addition of perhaps $5 as an additional gift. In the year 1944, however, the husband and wife determined to give their son an interest in royalties of two Signal Hill oil wells, known as "Dormax" and "De Soto." Payment of the royalties commenced in the year 1944, and from that date on, almost without exception, all of the periodical payments were put into the account in question, and a similar account which had been established for their daughter.

From the year 1944 to 1957, the trust account was carefully managed by the defendant; from time to time he took out accumulated cash and purchased stocks for his son; these

---

*Assigned by Chairman of Judicial Council.

stocks were put in a safety deposit box; during this whole time additional gifts of stocks and cash given to the plaintiff on his birthdays and at Christmas time were added. to the trust property.

In 1953 the defendant separated from his wife, leaving the two children in her custody. In 1955 a property settlement agreement was executed between the defendant and his wife, and a divorce followed; this property settlement agreement provided, among other things, that the defendant should pay the costs of education in school and college for the two children.

After his graduation from Stanford in 1957, the plaintiff was given by the defendant a list of properties entitled "Stocks owned by Fred, Jr., as of 9-30-53"; it included stocks of various companies and also referred to the "Dormax" and "De Soto" oil royalties; the plaintiff was also given two bank books showing a total cash balance as of that time of $121.26. Some of the stocks listed in the 1953 instrument were not delivered to plaintiff in 1957, and he later asked his father for an accounting, which was refused. The suit followed.

It is clear from the evidence that defendant at all times kept the funds and stocks separate from his own and that during most of this time he preserved meticulous records of all transactions. No income tax was ever paid by the defendant on income put into the account or earmarked for the plaintiff. No mention of any of the stocks or properties in this account was made in the property settlement agreement of the husband and wife which preceded their divorce.

In their enthusiasm for their client counsel for appellant are prone to forget that appellate courts cannot try cases de novo. ■ It is our duty to ascertain whether the findings of the trial court are supported by substantial evidence and if the answer to this inquiry is affirmative we must accept the facts so found. It is a commonplace that a lawsuit normally produces conflicting evidence. ■ ■ We cannot reweigh the evidence on appeal or pass on the credibility of witnesses. Applying these elementary principles to the record before us, it seems clear to us that the trial judge had ample grounds to reach the conclusion which he did, namely, that the trust created when the plaintiff was only two years old was irrevocable in type, that the father as trustee owed a duty to account to the plaintiff, and that the accounting made by him

in the course of this litigation shows that he owes to plaintiff the sum specified in the decree.

The appellant contends that the trust was only tentative and that he had a right to revoke it in whole or in part whenever he saw fit, at least prior to 1957. It is also suggested that perhaps no trust was ever created in the first place in that there was no actual or symbolic delivery of any of the property until plaintiff was 21 years of age and that at that time the delivery only covered the actual balances in the bank and the stocks then on hand. The appellant also relies on section 2280 of the Civil Code, which permits the revocation by the trustor of a trust unless such trust is made irrevocable by the instrument creating it, and in this connection the appellant contends that no written notice of termination was necessary where the trustee and the trustor are the same person. Finally, it is contended that as there is allegedly a presumption that deposits subsequent to withdrawals from an account are repayments and not gratuities, the defendant did not get sufficient credit in the final accounting.

From an analysis of the briefs of the appellant and respondent it would appear that they both have finally reached the conclusion that the case involves a trust of some kind. There are numerous instances of precedent gifts to the plaintiff, but the account itself, including the holding of the stocks, constitutes a conclusive appearance of trust. The situation has all of the incidents of a trust, including the holding of legal title to property by one person, the trustee, for the benefit of another.

The first question to be determined is whether or not in its inception this was a tentative trust or a so-called irrevocable trust. Secondly, the question arises whether revocation in whole or in part could take place or did take place. Lastly, we must determine whether the accounting was erroneous in that some of the deposits which were treated by the court as increments to the trust res were in fact repayments of personal borrowings which the defendant trustee made from the trust.

Scott on Trusts (2d ed. 1956), volume 1, section 58, page 477, points out that there are numerous instances in which a person makes a deposit in a savings bank in his own name "in trust" for another and that two questions always arise with respect to such deposits:

"The first question is as to the intention of the depositor

in making the deposit. The second question is whether there is any obstacle in the way of the effectuation of his intention.''

Scott treats the intention of the depositor as follows in volume 1, section 58.1, page 477:

''The intention of the depositor when he makes a deposit in his own name in trust for another may be (1) to create an irrevocable trust; (2) not to create a trust; (3) to create a revocable trust.''

Scott continues in the same section, on pages 479 to 481 as follows:

''. . . the evidence may show that the depositor intended to create an irrevocable trust. This may be shown by his words and conduct at the time when he made the deposit, or by his subsequent words or conduct. Thus where the depositor delivers the bank book to the beneficiary, this is an indication of his intention to make the trust irrevocable; but it may be shown that the book was delivered to the beneficiary only for safe keeping and not with the intention of making the trust irrevocable. So also, where the depositor informs the beneficiary of the deposit, he may thereby indicate an intention to make the trust irrevocable. The fact that the depositor informs the beneficiary of the deposit, however, does not necessarily indicate an intention to make the trust irrevocable. Where the depositor signs an instrument declaring that he holds the deposit in trust, this may indicate an intention to create an irrevocable trust. The intention of the depositor to make the trust irrevocable may be manifested in other ways, as by a statement to a third person of his intention. Where the money deposited had been received by the depositor as trustee and he deposited it in his name as trustee for the beneficiary, he cannot, of course, revoke the trust.''

The argument made by the appellant that this trust was tentative seeks support in the case of *Brucks* v. *Home Federal S. & L. Assn.*, 36 Cal.2d 845 [228 P.2d 545] at pp. 849-850, where it is said:

''The doctrine of 'tentative trusts' created by deposits 'in trust' for some person other than the depositor appears to be accepted law in this state. [Citations.] In adopting such doctrine, the California decisions have followed the rule formulated in the oft-quoted case of *Matter of Totten*, 179 N.Y. 112 [71 N.E. 748, 752, 1 Ann.Cas. 900, 70 L.R.A. 711]. . . .''

The *Totten* case held in connection with a deposit by one person of his own money in his own name as trustee for another that standing alone such action does not establish an

irrevocable trust during the lifetime of the depositor but a tentative trust merely which may be revoked at will "until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary."

As pointed out in the *Brucks* case, *supra,* page 850:

"The determinative consideration is the matter of the intent of the depositor, and 'this is a question of fact for the trier of the facts.' (*Kosloskye* v. *Cis, supra,* 70 Cal.App.2d 174, 180 [160 P.2d 565]; see, also, Restatement of the Law of Trusts, § 58, p. 181; Bogert, The Law of Trusts and Trustees, vol. 1, § 47, p. 202.)"

The *Totten* theory does not apply to this case. In the first place, the money with which the account was started was property not of the depositor father, but of the beneficiary son; as respondent's mother testified, the two parents decided to start the account with the son's money for his benefit. Thus, the trustors were in fact both the plaintiff's mother and father as natural guardians of the respondent, and the trustee the father only. The deposits thereafter in the account were either the property of the plaintiff or originally the community property of his mother and father, which items of property were given to him. Furthermore, the record is not devoid of proof of "unequivocal acts" establishing the irrevocable nature of the trust during the long course of the existence of the trust, evidenced both by conversations held between the defendant and his wife and between the defendant and the plaintiff. The trial court had ample evidence, therefore, on which to base its finding that this was an irrevocable trust and not a tentative trust.

With respect to the contention that the defendant had a right to revoke the trust in whole or in part by reason of the provisions of section 2280 of the Civil Code, reading as follows, "Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee," it should be noted that contrary to the contention of the appellant the trustor included not only the defendant but his wife, mother of the plaintiff, and that there was never filed with the trustee any writing revoking the trust by either or both. The contention that when the trustor and the trustee are identical it is not necessary to file a writing is therefore not applicable to the facts in this case.

Appellant questions the accounting; he contends that

wherever the account shows a payment of money, subsequent to a previous withdrawal, the presumption should be that the later deposit was a repayment, rather than a gratuity. In this connection appellant relies upon the general rule that there is a presumption of fairplay in the absence of evidence to the contrary (*Ryder* v. *Bamberger*, 172 Cal. 791, 799-800 [158 P. 753]; Code Civ. Proc., § 1963, subd. 19) and argues that when a payment is made after proof of a debt it is presumably made to discharge the debt rather than to constitute a gift (71 A.L.R. 1024, 1025). However, this contention completely overlooks the fact that the trial judge had the duty to pass on each financial item and that he had to be convinced of the correctness of the accounting from all of the evidence. ▊ In this connection it is elementary, as is stated in *Mashon* v. *Haddock*, 190 Cal.App.2d 151 [11 Cal. Rptr. 865] at p. 166, that:

"The burden of establishing the account is on the trustee, including the burden of showing that any expenditure made was a proper disbursement. (*Purdy* v. *Johnson*, 174 Cal. 521, [163 P. 893]; 49 Cal.Jur.2d p. 160.)"

▊ Similarly, the burden of proving that later deposits in the account were repayments is upon the trustee. ▊ And the trial court must determine from the evidence what credits should be given.

▊ The repayments referred to were shown by the record to have been for the most part deposits from the oil royalties which had previously constituted community property and were given to their son by the husband and wife, and inasmuch as the source of these payments was so identified, any presumption that such items were repayments rather than gifts would be completely outweighed.

The court had ample evidence upon which to base its conclusions and findings as to the accounting, and we cannot interfere therewith.

The judgment is affirmed.

Griffin, P. J. and Brown (Gerald), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 20, 1963. Schauer, J., and McComb J., were of the opinion that the petition should be granted.