[Civ. No. 37718. Second Dist., Div. Two. Oct. 4, 1971.]

Estate of AARON FRIEDMAN, Deceased.
ROSE KNABLE, Petitioner and Respondent, v.
IRENE FRIEDMAN, Claimant and Appellant.

**COUNSEL**

Charles Kairys for Claimant and Appellant.

Voorhees, Knable & Voorhees and Sidney Knable for Petitioner and Respondent.

**OPINION**

**FLEMING, J.**—The issue here is which of five savings accounts should be included in the estate of Aaron Friedman. The adverse parties are Irene Friedman, Aaron's widow and administratrix of his estate, who claimed the accounts as hers; and Rose Knable, Aaron's sister, who petitioned the probate court to include the savings accounts in Aaron's estate.

Aaron and Irene were first married in Cleveland, Ohio, in 1919. Because Aaron failed to support her, Irene divorced him in 1920 and moved to Los Angeles. Aaron remarried, and his second wife died in 1967. In July 1968 Aaron came to Los Angeles to visit his sister Rose, met Irene, and asked her to remarry him. Irene told him she could not live on love alone, that she would not marry him again unless he had money.

Aaron went back to Cleveland to wind up his affairs, and on 18 August he returned to Los Angeles, where Irene met him at the airport. He handed her an envelope which contained five $15,000 cashier's checks, which checks, however, were not payable to her. "Here," said Aaron, "this is yours." Later that night Irene handed the checks back to him. "You take it," she said, "we are not married yet."

The following day Aaron and Irene went to a savings and loan association. To maintain maximum deposit insurance protection five savings accounts were opened under the following names:

| | |
|---|---|
| Aaron Friedman, with Power of Attorney to Irene Friedman | $15,000 |
| Irene Friedman, with Power of Attorney to Aaron Friedman | $15,000 |
| Aaron Friedman and Irene Friedman as Joint Tenants (H/W) | $15,000 |
| Aaron Friedman, as Trustee for Irene Friedman (Wife), with Power of Attorney to Irene Friedman | $15,000 |
| Irene Friedman, as Trustee for Aaron Friedman (Husband) with Power of Attorney to Aaron Friedman | $15,000 |

The passbooks for these accounts were handed to Aaron, who in turn handed them to Irene. On 22 August Aaron and Irene were married, and after the ceremony Aaron tore up a will he had previously made in Cleveland. Later Aaron put $2,000 into Irene's checking account to pay for bedroom furniture. On 10 September they went to Malibu to spend a vacation with Irene's relatives. Aaron and Irene intended to make wills after they returned from vacation, but on 16 September Aaron died without having made a will. Rose Knable testified Aaron intended to leave his $2,500 ring to her.

■ (See fn. 1.) The trial court ruled that the $2,000 deposited in Irene's checking account was a completed gift in contemplation of marriage, and

that the $2,500 ring and other personal property in Aaron's possession at the time of his death were the separate property of Aaron and belonged to his estate.[1] With respect to the five $15,000 savings accounts, the trial court determined that the account in Irene's name was a completed gift in contemplation of marriage, that the account in Aaron's name had been Aaron's separate property and belonged to his estate, and that the remaining three accounts were "tentative trusts," which Aaron had not intended to pass to Irene on his death and which therefore remained his separate property and belonged to his estate. Irene has appealed the trial court's award of four of the $15,000 savings accounts to the estate.

In our view the trial court's disposition of the savings accounts cannot be reconciled with the facts of the controversy, for we find no basis for the conclusion that Aaron intended the form of title of the savings accounts to control the disposition of some of the accounts but not of others. We briefly recapitulate what we believe to be the critical elements in the controversy.

■ It seems clear that Aaron did not intend to strip himself of his entire property on the occasion of his forthcoming marriage to Irene. With his own money he opened five different savings accounts to obtain maximum deposit insurance protection and show Irene his good faith in the financial aspects of the forthcoming marriage. His use of five different accounts was consistent with his prior practice, for in Ohio he had held these same funds in $15,000 accounts in five different financial institutions. He retained joint control over the accounts through legal title and powers of attorney.[2] He still intended to make a will. Had he intended to give his entire property to Irene it is logical to suppose he would have made arrangements to put the property in her name and transferred exclusive control over it to her.

It seems equally clear that Aaron intended to give Irene a property interest in his assets and intended to give her a legally enforceable claim against them of a nature which the parties had not precisely worked out. Irene had insisted upon some such arrangement as a condition of marriage, and Aaron had agreed to it. Unquestionably, the establishment of the savings and loan accounts was more than a mere ceremonial act in recognition of the forthcoming marriage, and both parties understood and intended that

---

[1] Normally the probate court cannot try title to property between the estate and strangers to the estate. But the court can properly consider this controversy because it has jurisdiction to try title to property which is claimed by heirs for the estate and which is also claimed by the representative of the estate in his individual capacity. (*Schlyen v. Schlyen*, 43 Cal.2d 361, 372 [273 P.2d 897].)

[2] All powers of attorney terminated on Aaron's death. (Civ. Code, §§ 2355, 2356.)

the deposit of the funds in the association would have a binding legal effect on the parties.

Thus we reject both the contention that the deposits were a gift of Aaron's entire property to Irene and the contention that the creation of the deposits in the chosen form was a temporary arrangement without legal significance. In our view Aaron's establishment of these savings accounts was an act which fell somewhere between these extremes. Unfortunately, Aaron died before making a will and before he could precisely and specifically delineate his intention with respect to the disposition of these accounts after his death. Thus the exact nature of Aaron's dispositional intention, if in fact he had formed such an intention, remains suppositional speculation, and we are not required to consider to what extent Aaron could have nullified what appears to have been an executed contract in contemplation of marriage. Under these circumstances the general rules of law control, and ownership of the savings accounts must be determined by the titles in which they stood at the time of Aaron's death. On this basis we conclude:

1. The proceeds of the savings account in Aaron's name belong to Aaron's estate.

2. The proceeds of the savings account in Irene's name belong to Irene as a completed gift and may not be included in Aaron's estate.

3. The proceeds of the joint tenancy savings account belong to Irene and may not be included in the estate. Financial Code section 7604 provides that in the absence of fraud or undue influence the joint tenancy form of a savings and loan investment certificate is conclusive evidence of the intention of the certificate holders to vest title in the survivor. Since there was no evidence of fraud or undue influence, and no evidence of any subsequent agreement to alter ownership of the certificate, the form of the certificate is conclusive. (Cf. *Pruyn* v. *Waterman*, 172 Cal.App.2d 133, 136-137 [342 P.2d 87].)

4. The proceeds of the savings account in Aaron's name in trust for Irene belong to Irene. The trial court found that this was a "tentative trust." But even a tentative (revocable) trust becomes irrevocable on the death of the trustor—in the absence of some decisive act or declaration of disaffirmance during the trustor's lifetime. (*Brucks* v. *Home Federal S. & L. Assn.*, 36 Cal.2d 845, 850 [228 P.2d 545].) No such act or declaration of disaffirmance by the trustor took place here.

5. The proceeds of the savings account in Irene's name in trust for Aaron belong to Aaron's estate. (2 Scott on Trusts (3d ed. 1967) § 142, p. 1090.) It is undisputed that Aaron used his own money to create

a trust with Irene as trustee and himself as beneficiary. Irene, as trustee of this trust, had no right to revoke the trust after the death of the beneficiary, and she acquired no interest in its proceeds.

The judgment is vacated, and the cause is remanded to the trial court with instructions to enter findings and judgment in accordance with this opinion.

Roth, P. J., and Herndon, J., concurred.