[Civ. No. 16366.   Second Dist., Div. Three.   Dec. 22, 1948.]

CHAROLETTE WESTHOLM, Appellant, v. GLENN A. PRATT et al., Respondents.

Sullivan, Lane & Clarke for Appellant.

Gibson, Dunn & Crutcher for Respondents.

WOOD, J.—Plaintiff appeals from the judgment entered upon a verdict in favor of defendants, in this action for

damages for wrongful death of plaintiff's husband, who died as a result of being struck by an automobile driven by defendant Pratt and by an automobile driven by defendant Fluhrer. She also appeals from an order denying her motion for a new trial. The appeal has been dismissed, upon stipulation, as to defendant Fluhrer. Defendant Pratt will be referred to as the defendant.

Appellant contends that the evidence was insufficient to support the judgment. She argues that there was no evidence of contributory negligence on the part of decedent, and that defendant was guilty of negligence as a matter of law.

The accident occurred on February 3, 1946, about 7 p. m., at the intersection of Sunset Boulevard and Micheltorena Street in Los Angeles. About 6:45 p. m. on that day, Mr. Westholm left his home on Micheltorena Street, north of Sunset Boulevard, intending to board a streetcar at the intersection. Micheltorena Street intersects Sunset Boulevard on the north only—there is no intersecting street on the south side of Sunset Boulevard at or near this intersection. Sunset Boulevard is 76 feet wide, is paved, and is divided by white lines into four vehicular-traffic lanes—two for eastbound traffic and two for westbound traffic. Near the center of the boulevard there are two streetcar tracks—one for eastbound cars and one for westbound cars. A passenger safety zone, which is designated by white lines on the pavement, is near the south rail of the eastbound car track, and adjoins the west entrance of the intersection.

Defendant testified that he was driving east on Sunset Boulevard at a rate of speed between 20 and 25 miles an hour; that as he approached the said intersection—when he was about 60 feet west of the safety zone—he observed the safety zone reflector buttons and the white marker or diagonal line which extends west from the west end of the zone, and then, in order to pass to the left or north side of the safety zone, he turned his automobile to his left and across the eastbound car track so that the right wheels of his automobile were just north of the south rail of the eastbound car track; that when he was about 3 feet west of the east end of the safety zone, a man standing in the zone seemed to be leaning to the north out into the street, and the right front fender of defendant's automobile struck him; that the body rolled on the hood of the automobile and then rolled off the right side of the hood; that after the impact the defendant parked his

automobile at the south curb of Sunset Boulevard and went back to give assistance to the injured man, Mr. Westholm, who was. lying in the street; that defendant then saw an automobile coming east in the same traffic lane he had traveled and he waved his arms trying to stop the other automobile but the automobile hit Mr. Westholm and ran over his body. (The driver of the other automobile was the defendant Fluhrer.) Defendant testified further that the street was wet at the time of the accident; that he did not remember whether it was raining at that particular time; that it was a dark night, and the visibility was poor; that he first saw Mr. Westholm a split second before the impact. He also testified that as a result of the impact there was a dent on his automobile between the right headlight and the grill of the hood, and a dent in the middle of the hood, and a crack in the glass of the right headlight.

Mr. Ferguson, a student, called as a witness by appellant, testified that he also was driving an automobile east on Sunset Boulevard at the time of the accident; that he and the defendant stopped their automobiles at the same time at a stop sign at Maltman Street, which is two long blocks west of the scene of the accident; that after leaving that place he (witness) traveled at a rate between 25 and 30 miles an hour, and that the defendant was about 75 yards ahead of him after he (witness) had traveled the first block; that as defendant traveled toward the Micheltorena intersection his automobile was in the lane next to the center of Sunset Boulevard; that when defendant's automobile was approaching the markers west of the safety zone the left wheels of his automobile were on the south rail of the eastbound car track; that when defendant was about 10 feet west of the west end of the zone he made a sharp left turn and thereafter the front wheels of his automobile hit the safety zone buttons, and then it appeared as if he went back into the safety zone, and then he (witness) saw a body fly in the air; that he (witness) did not see the man until he went into the air; that he (witness) did not stop at the scene of the accident; and that he could see fairly well on Sunset Boulevard that night.

Mr. Rutledge, a student, called as a witness by appellant, testified that he was riding with Mr. Ferguson; that he saw defendant's automobile bounce off the ''stop'' in the west end of the safety zone while it was traveling at a rate of speed between 30 and 35 miles an hour, and then he saw a man fly up

in the air; that a few seconds before the man was struck he saw him standing on the north edge of the safety zone "about in the middle" of the zone.

Mrs. Berkeley, a witness called by appellant, testified that she and her husband were traveling east on Sunset Boulevard at the time and place of the accident, and that her husband was driving and she was in the right front seat; that she first noticed defendant's automobile when it turned to go to the left of the safety zone; that defendant went onto the car track and when he hit the track he swerved back into the safety zone and hit Mr. Westholm and threw him into the air; that just before Mr. Westholm was hit she saw him standing in the safety zone; that defendant's automobile at the time of the accident was going a little faster than 30 miles an hour; and that after defendant's automobile hit Mr. Westholm another automobile hit him.

Mr. Muller, a commander in the Navy, testified, by way of deposition taken on behalf of defendant, that he was riding in the front seat with defendant Pratt, who was taking him to the union station; that as they approached the said intersection they were traveling about midway between the east-bound car track and the south curb of Sunset Boulevard; that as they approached the diagonal white line west of the safety zone defendant turned the automobile to the left or north of that line and onto the car track and did not cross that line at any time; that the right wheels of the automobile were then probably a little to the right of the south rail of the car track, and the automobile proceeded straight on Sunset Boulevard and did not at any time go into the safety zone; that when the automobile had passed about one-half of the safety zone he suddenly noticed Mr. Westholm going across in front of the automobile toward the north, and in a split second the automobile hit him; and that at the time of the accident there was a drizzly rain, the street was wet, and the visibility was not good.

Appellant argues that the only conclusion that can reasonably be drawn from the evidence is that the defendant negligently operated his automobile in violation of sections 525 and 572 of the Vehicle Code, that he did not maintain a proper lookout, and that he struck decedent, who was not at all negligent, while he was in the safety zone.

As to the alleged violation of section 525 of the Vehicle Code, appellant argues that defendant violated the section by

not driving as close as practicable to the right-hand edge of the roadway. Apparently that argument is based upon said section 525 as it read prior to the amendment of the section in 1945. That amendment deleted the provision relative to driving as close as practicable to the right-hand edge of the roadway, and provided in lieu thereof that a vehicle shall be driven upon the *right half* of the roadway. This accident occurred after that amendment became effective. The defendant did not violate that section by driving in the traffic lane next to the center of the boulevard.

■ As to the alleged violation of said section 572, which provides that, ''No vehicle shall at any time be driven through or within a safety zone,'' appellant argues that defendant drove within the safety zone and struck Mr. Westholm who was standing therein. There was a substantial conflict in the evidence as to whether Mr. Westholm was in the safety zone when he was struck. Mrs. Berkeley and Mr. Rutledge testified that defendant drove within the safety zone and that Mr. Westholm was in the zone when he was struck. Mr. Ferguson testified that it appeared as if defendant drove into the safety zone. Contrary to that evidence, Mr. Muller, who was riding with defendant, testified that defendant did not go into the zone, and that Mr. Westholm was going across, toward the north, in front of the automobile. Also defendant testified that he did not drive within the safety zone. It cannot be said properly that the implied finding of the jury that defendant did not drive within the safety zone was not supported by substantial evidence. ''[W]hen a verdict is attacked as being unsupported [by the evidence], the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.'' (*Bellon* v. *Silver Gate Theatres, Inc.*, 4 Cal.2d 1, 14 [47 P.2d 462].)

■ As to the alleged failure of defendant to keep a proper lookout, appellant argues that since two of appellant's witnesses saw the decedent standing in the safety zone, the defendant should have seen him and would have seen him if defendant had been looking. This was also a question of fact for the determination of the jury. The evidence pertain-

ing to visibility was conflicting. Mrs. Berkeley and Mr. Rutledge, called as witnesses by appellant, said they saw decedent before the impact. Mr. Muller, who was riding with defendant, testified that as they approached the intersection he was looking through the windshield, and that he did not see the decedent until a split second before the impact, and that the visibility that night was not good. Defendant testified that the night was dark and the visibility was poor. Mr. Ferguson, a witness called by appellant, did not see decedent prior to the impact, and said that he could see fairly well on Sunset Boulevard that night.

It cannot be determined, as a matter of law, under the conflicting evidence here regarding visibility, rate of speed, the place where decedent was before the impact, and the route traveled by defendant, that negligence on the part of defendant was the sole proximate cause of the accident.

The judgment is affirmed, and the appeal from the order denying the motion for a new trial is dismissed.

Shinn, P. J., and Vallée, J., concurred.