[Civ. No. 19004. First Dist., Div. Two. Nov. 28, 1961.]

WALTER MILTON FULTZ, Plaintiff and Appellant, v. THOMAS FRANCIS GRIFFIN, Defendant and Respondent.

Thomas H. Matimore for Plaintiff and Appellant.

Bledsoe, Smith, Cathcart, Johnson & Phelps and Robert A. Seligson for Defendant and Respondent.

AGEE, J.—Plaintiff appeals from an adverse judgment entered upon a jury verdict in an auto-pedestrian action. The accident happened on Bayshore Highway, near Sunny-

vale, on December 7, 1956, about 6:25 a. m. Defendant was alone in his automobile and was due at work in San Jose at 7 a. m. It was dark at the time and defendant's headlights were lighted. He did not see plaintiff before the latter was struck by either the left front or the left side near the front of his automobile. There are four lanes for traffic and a double white line separates the two northbound lanes from the two southbound lanes. A broken white line separates the inside lanes from the outside lanes. The accident occurred at or near where Borregas Avenue intersects Bayshore. Defendant was southbound in the southbound lane next to the center line. Plaintiff was on or near the center line when struck. There is no evidence that defendant's automobile at any time crossed over the center line. The parties agree that the prima facie speed limit was 55 miles per hour. All references herein to the Vehicle Code, unless otherwise noted, are as it was in effect at the time of the accident.

[██] Plaintiff requested and the court refused an instruction based upon section 525, subdivision (a) of the Vehicle Code, which provides that: "Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway," with certain exceptions not pertinent herein. In other words, the contention is that defendant should have been in the outside southbound lane instead of the lane next to the center line. (*Westholm* v. *Pratt* (1948) 89 Cal.App. 2d 272, 275-276 [200 P.2d 536], discusses this section as it existed after being amended in 1945. "That amendment deleted the provision relative to driving as close as practicable to the right-hand edge of the roadway, and provided in lieu thereof that a vehicle shall be driven upon the *right half* of the roadway. This accident occurred after that amendment became effective. The defendant did not violate that section by driving in the traffic lane next to the center of the boulevard." The scene in that case was Sunset Boulevard in Los Angeles. It was divided by white lines into four lanes, two eastbound and two westbound. Defendant was driving east in the lane next to the center line when his automobile struck and killed a pedestrian.

Plaintiff in the instant case is well aware of the 1945 amendment but he argues that there were in effect two roadways here, one for southbound traffic and the other for northbound traffic, which roadways are divided by a double white line. We do not so construe section 525. ██ Section 83 of the Vehicle Code provides: " 'Roadway' is that portion of a high-

way improved, designed or ordinarily used for vehicular travel.'' We do not read into that section ''vehicular travel *in one direction.*'' We think it clear that the Legislature intended the term ''roadway'' to mean the entire portion of the highway which is devoted to vehicular traffic, and not to mean that portion only upon which vehicles travel in the same direction.

 The court refused instructions based on section 525.1 of the Vehicle Code (since repealed). That section requires that a vehicle proceeding at less than the normal speed of traffic going in the same direction shall be driven in the right hand or outside lane, unless overtaking another vehicle or preparing to make a left turn. There was no evidence to justify a conclusion that defendant was proceeding at less than the normal speed. The undisputed testimony was that defendant was proceeding at 55 miles per hour and there was no evidence that there was any other traffic near the scene at the time of the accident. There must be more than mere surmise or conjecture as to facts which would justify the giving of an instruction. (*Bardin* v. *Case,* 99 Cal.App.2d 137, 142 [221 P.2d 292].)

 Plaintiff next complains of the court's instructions on a pedestrian's right of way. After defining this as ''the privilege of the immediate use of the highway,'' the court gave the following instruction, which is in the language of BAJI 201-A: ''Although as to a roadway locality such as that involved in this case a pedestrian has the right to cross the road at any point, these factors of consideration enter into the question of what conduct is required of him in the exercise of ordinary care: 1. If he crosses within a marked crosswalk, or at an intersection within a crosswalk, whether marked or not, the law requires the drivers of all vehicles to yield him the right of way. 2. If he crosses at any other place the law requires him to yield the right of way to all vehicles on the roadway so near as to constitute an immediate hazard, although this requirement does not relieve the driver of a vehicle from the duty of exercising ordinary care for the safety of any pedestrian upon a roadway. 3. The amount of caution required to constitute ordinary care increases or decreases as does the danger that a reasonably prudent person in like position would apprehend in the situation.'' This instruction correctly states the law as applied to this case.

 The court did not give the definition of sidewalk, crosswalk and intersection as contained in sections 84, 85 and

S6 of the Vehicle Code, respectively, but this was not prejudicial to the plaintiff. It was conceded that there was no marked crosswalk. The instruction given necessarily implies that there was evidence of the existence of an unmarked crosswalk at the intersection when it states that ''if he [the pedestrian] crosses . . . at an intersection within a crosswalk, whether marked or not, the law requires the drivers of all vehicles to yield him the right of way.'' Certainly, the jury must have understood from this that there was evidence from which they could conclude that the plaintiff was crossing at the intersection (of Bayshore and Borregas) within an unmarked crosswalk. Otherwise, the court would be giving an instruction without there being any evidence upon which the jury could apply the instruction. The photographs and the engineer's diagram of the intersection were admitted in evidence without objection. The court admitted testimony as to the use by pedestrians of the dirt shoulders along Borregas and where such pedestrians customarily crossed Bayshore in line with such shoulders. In any event, if there was any error in failing to define sidewalk, crosswalk and intersection it was not such as to justify or require a reversal of the judgment. (Cal. Const., art. VI, § 4½.)

It should also be pointed out that there is no evidence that plaintiff was crossing Bayshore at the intersection except the presumption of due care and the testimony that pedestrians customarily crossed there. The testimony of defendant and the physical facts, such as blood on the highway and the location of the plaintiff's slippers which were knocked off by the impact, placed the impact well to the south of the intersection.

The next point is somewhat astonishing. Plaintiff states it in his opening brief as follows: ''All instructions on appellant's duty in crossing a highway were erroneous ,in view of the evidence that he was not crossing, but was standing on the double white line.'' In his complaint plaintiff alleges that he was ''a pedestrian crossing said Bayshore Highway at Borregas Avenue.'' Throughout the trial and elsewhere in his briefs plaintiff maintained the theory of crossing. In the latter, for example, he states that ''all of the evidence was circumstantial and plaintiff's theory was predicated upon the obvious and reasonable inference that appellant was crossing in the crosswalk.'' If plaintiff was not attempting to cross Bayshore, what was he doing standing there in the dark in the center of the roadway? We do not think the point merits further discussion.

█ Plaintiff testified that he did not remember any of the events of the accident and that the last thing he remembers was that shortly after 10 o'clock p. m. on the evening before he stopped at the "Rumpus Room" and "had a couple of drinks" and then got into a taxicab to go from Mountain View to Sunnyvale. The medical testimony based upon the injuries sustained by plaintiff was very much in conflict as to whether plaintiff's claimed amnesia could have resulted from the injuries sustained in the accident. Nevertheless, the court gave the following instruction: "Where a plaintiff who is injured in an automobile accident suffers from a loss of memory, and is unable to testify concerning his acts and conduct at, and immediately before the time of the accident, and where the defendant alleges that plaintiff was guilty of contributory negligence, the law provides in such case that a plaintiff, suffering from loss of memory, is entitled to the benefit of the presumption that he was, at the time and place of the accident, exercising ordinary care for his own safety, and that he was obeying the law." This is more favorable to plaintiff than he was entitled to, since the medical witness agreed that loss of memory could be caused by ingestion of alcohol or fatigue, as well as by trauma.

Defendant took the position that plaintiff did not tell the truth about his claimed loss of memory for the reason, according to defendant, that cross-examination of plaintiff as to his conduct at and immediately prior to the accident, if he had not claimed amnesia, would have established contributory negligence out of his own mouth.

The offered instructions of plaintiff which took from the jury the question as to whether his claimed amnesia was genuine were properly refused.

█ Plaintiff complains that the jury was instructed that it could take into consideration the question as to whether he was intoxicated at the time of the accident. The contention is made that there was no evidence to support it. This borders on the ridiculous. The testimony shows consumption of alcohol at the "Rumpus Room," the "Town Club" and at "Thelma's" during the evening before the accident. No one testified as to where he had spent the entire night but one witness thought he had slept in his truck. The following instruction was given: "Whether or not the plaintiff was intoxicated or otherwise incapable of acting as a reasonable man by reason of his activities the night before the accident is a proper question for the jury to consider in determining his conduct and

whether or not he was negligent. However, intoxication or the self-induced inability to act as a reasonable person is no excuse for failure to act as a reasonable prudent person would act. An intoxicated person or one who has become incapable of acting reasonably because of his own actions is held to the same standard of care as a sober and reasonable person.'' We find no error in the giving of this instruction. Plaintiff says in his brief, ''the record is devoid of any evidence of intoxication.'' But we may well ask ourselves whether it is the act of a sober person to be out on a highway such as Bayshore on a dark and cold December morning, clothed lightly and in carpet slippers. At least, the jury could consider whether plaintiff had been drinking in determining whether his conduct was that of a reasonable man.

We have reached the point in this opinion where we no longer feel it is incumbent upon us to pursue any further each and every additional point raised in the appellant's briefs. The opening brief consumes 177 printed pages and the closing brief 114 pages. We have examined the entire record and have carefully examined the briefs and we find that the plaintiff's appeal is entirely without merit.

The judgment is affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied December 28, 1961, and appellant's petition for a hearing by the Supreme Court was denied January 24, 1962.